[S.F. No. 24409. Dec. 6, 1982.]

SAN LORENZO EDUCATION ASSOCIATION,
Plaintiff and Respondent, v.
LARRY A. WILSON et al., Defendants and Appellants.

**COUNSEL**

A. Roger Jeanson, Haas & Najarian and Robert F. Gore for Defendants and Appellants.

Ronald A. Zumbrun, John H. Findley and Anthony T. Caso as Amici Curiae on behalf of Defendants and Appellants.

Diane Ross, Raymond L. Hansen, Kirsten L. Zerger, Penn Foote and Ramon E. Romero for Plaintiff and Respondent.

Van Bourg, Allen, Weinberg & Roger, Stewart Weinberg, Peter A. Janiak, Madalyn J. Frazzini, E. Luis Saenz, Maureen C. Whelan, Siona D. Windsor, Dennis M. Sullivan, Jeffrey Sloan and Elaine B. Feingold as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**BROUSSARD, J.**—Plaintiff San Lorenzo Education Association CTA/NEA (Association) was the exclusive bargaining representative of the certificated employees of the San Lorenzo Unified School District (District) for the 1977-1978 academic year. The collective bargaining agreement in force contained an "organizational security" or "agency shop" provision that required employees to either join the union or to pay it a service fee.[1] Under this agreement, enforcement of this provision was the responsibility of the Association and not that of the District.[2] The agreement did not specify that union membership or payment of the service fee functioned as a condition of continued employment, nor did it provide for termination of employment as a remedy for noncompliance.[3]

Defendants, certificated employees of the District, refused to either join the union or pay the service fee. The Association then sought and obtained judgments against them in several small claims court cases in the San Leandro-Hayward Municipal Court. Defendants appealed to the Alameda County Superior Court, where the court consolidated the cases for trial de novo on stipulated facts and granted judgment in favor of the Association.

---

[1]An organizational security agreement is commonly called an "agency shop" arrangement. A "union shop" differs in requiring all employees to join the union, with no alternative of paying a service fee.

Organizational security agreements are authorized by Government Code section 3546. This section is part of the 1975 Educational Employment Relations Act (EERA), Government Code, chapter 10.7, section 3540 et seq., also known as the Rodda Act. All references hereinafter are to the Government Code, unless otherwise indicated.

[2]Article II of the collective bargaining agreement contains the following relevant sections:

"B. For the duration of this agreement, all employees in the unit shall either join the Association or pay to the Association a service fee in an amount not to exceed the regular dues and general assessments required for Association membership. Employees who, because of religious, moral or ethical connections, choose not to pay the service fee shall pay an equivalent amount to the Association's scholarship fund . . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"D. The Association and not the District shall be responsible for requiring employees to fulfill their obligations under paragraph[ ] . . . B . . . of this Article . . . ."

[3]California School Employees Association (CSEA) has filed an amicus curiae brief in the present action. This organization represents 148,800 classified school employees in California. Many of its 646 collective bargaining agreements also do not contain the phrase "as a condition of continued employment."

■  In this appeal, defendants contend that section 3540.1, subdivision (i)(2) mandates dismissal as the sole remedy for failure to pay the service fee. We conclude, however, that because section 3540.1, subdivision (i)(2) does not prescribe any particular remedy for failure to pay a service fee to an exclusive bargaining representative, the organizational security provision in the agreement was proper despite its failure to make payment a condition of continued employment, and that civil suit is a proper and often preferred method of enforcing such a provision. We therefore affirm the judgment of the superior court.

## I.

It has long been held that agency shop clauses properly promote the payment of union dues and fees. "Thus Congress recognized the validity of unions' concern about 'free riders,' *i.e.*, employees who receive the benefits of union representation but are unwilling to contribute their share of financial support to such union . . . ." (*Radio Officers* v. *Labor Board* (1954) 347 U.S. 17, 41 [98 L.Ed. 455, 477-478, 74 S.Ct. 323, 41 A.L.R.2d 621].) The exclusive agreement also has advantages for the employer, by freeing him "from the possibility of facing conflicting demands from different unions . . . ." (*Abood* v. *Detroit Board of Education* (1977) 431 U.S. 209, 221 [52 L.Ed.2d 261, 275, 97 S.Ct. 1782].) Such considerations led California to authorize organizational security agreements under the EERA.[4] (See, e.g., Oakland Unified School District (1978) PERB Order No. Ad-48, at pp. 11-13.)

The issue in the case at bar centers on the Legislature's use of the words "as a condition of continued employment" in defining an organizational security agreement. Section 3540.1, subdivision (i)(2) defines organizational security as "[a]n arrangement that requires an employee, *as a condition of continued employment*, either to join the recognized or certified employee organization, or to pay the organization a service fee . . . ." (Italics added.)

Defendants urge that this terminology in section 3540.1, subdivision (i)(2) provides for the remedy of termination of a noncomplying employee's employment, and therefore other remedies, such as private civil actions, should not be read into the statute.[5]

---

[4] See footnote 1, *ante*.

[5] Defendants cite *Transamerica Mortgage Advisors, Inc.* v. *Lewis* (1979) 444 U.S. 11 [62 L.Ed.2d 146, 100 S.Ct. 242] as authority: "[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." (P. 19 [62 L.Ed.2d, pp. 154-155].)

*Transamerica* concerned the violation of 15 United States Code section 80b-6 of the Investment Advisors Act of 1940 (15 U.S.C. § 80b-1 et seq.). Section 80b-17 provides for criminal punishment for such a violation; section 80b-9(e) authorizes the commission to seek injunctive

In our opinion, however, section 3540.1, subdivision (i)(2) does not prescribe a remedy at all, let alone an exclusive one. The plain reading of the statute indicates that it is merely a definitional section, not intended as a substantive limitation on union remedies. This reading, as we will explain, is supported by an opinion of the Attorney General and by the practice of the Public Employment Relations Board (PERB).

## II.

Two considerations are especially pertinent to our construction of this statute. First, we must read the act as a whole rather than, in preoccupation with a single phrase, ignore its position in the structure of the statute. Section 3540.1, titled "Definitions," functions primarily as a reference guide which accompanies us through the act. It identifies and gives meaning to various terms as we encounter them in the substantive portions of the enactment. Second, we recognize that in enacting the EERA, the Legislature did not purport to invent anew the law of labor relations. Much of the act is no more than an unremarkable application of standard collective bargaining concepts well estab-

---

relief; section 80b-3 authorizes the commission to impose administrative sanctions. Because Congress had expressly provided these remedies, the United States Supreme Court concluded that Congress did not intend to also create a private cause of action, and therefore none would be implied.

The case at bar simply contains no remedial provisions for when a third party, the employee, fails to comply with a collective bargaining agreement. "Condition of continued employment" hardly provides for express remedies such as criminal punishment, injunction or administrative sanction.

Furthermore, the court did not conclude that where a remedy is prescribed, a private right of action could never be implied. Rather, "[t]his Court has held that the failure of Congress expressly to consider a private remedy is not inevitably inconsistent with an intent on its part to make such a remedy available. [Citation.] Such an intent may appear implicitly in the language or structure of the statute, or in the circumstances of its enactment." (*Id.*, at p. 18 [62 L.Ed.2d at p. 154].) In fact, a four-part test must be met. "First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' [citation]—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? [Citation.] Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? [Citations.] And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? [Citations.]" (*Cort* v. *Ash* (1975) 422 U.S. 66, 78 [45 L.Ed.2d 26, 36, 95 S. Ct. 2080], italics in original; quoted in *Cannon* v. *University of Chicago* (1979) 441 U.S. 677, 688-689, fn. 9 [60 L.Ed.2d 560, 99 S.Ct. 1946].)

This four-part test is clearly inapplicable to the case at bar. It is specifically designed for interpretation of federal law. The fourth question has no relevance whatsoever to the interpretation of a state law: it asks whether an area of law is of basic concern to the states, and thus not in the province of federal legislation. If so, a *federal* private right of action would not be implied. Instead, the litigant should look to *state* law, common or statutory, for a right of action. Such a result is dictated by our federalist system and the Tenth Amendment of the United States Constitution. (See, e.g., *National League of Cities* v. *Usery* (1976) 426 U.S. 833 [49 L.Ed.2d 245, 96 S.Ct. 2465].) In the case at bar, the question *is* whether a common law action for damages may be implied from section 3540.1, subdivision (i)(2). Thus, the *Cort* v. *Ash* line of cases is inapplicable to the case at bar, and offers nothing to advance defendants' theory.

lished in other private and public sector contexts to public education employment.

The act provides a means by which an employee organization may be "recognized" or "certified" as the exclusive bargaining representative for a bargaining unit. (§§ 3543.1, 3544-3544.9.) Once an exclusive bargaining representative is so chosen, employees are prohibited from negotiating individually over terms and conditions of employment. (§ 3543.) Consistent with these features, the EERA, like other pieces of labor legislation, replaces common law contractual principles with a collective bargaining regimen. It is a fundamental principle of such a system that a member of a bargaining unit is bound by the terms of a valid collective bargaining agreement, though he is not formally a party to it and may not even belong to the union which negotiated it. (*Chavez* v. *Sargent* (1959) 52 Cal.2d 162, 197 [339 P.2d 801]; *Douglas Aircraft Co.* v. *California Unemployment Insurance Appeals Board* (1960) 180 Cal.App.2d 636, 646 [4 Cal.Rptr. 723]; *Porter* v. *Quillin* (1981) 123 Cal. App.3d 869, 874 [177 Cal.Rptr. 45].) The courts will relax this rule only where enforcement of a collective bargaining term would contravene an extraordinarily strong and explicit state policy. Thus, *Porter* v. *Quillin, supra,* held all employees in a unit bound by an agreement requiring them to accept a portion of their wages in meal credits despite case law interpreting the Labor Code to require "specific and prior voluntary employee consent" for such arrangements. (*Porter, supra,* 123 Cal.App.3d 869, 872-874.)

We are guided by this policy of maintaining flexibility for employers and bargaining representatives in our consideration of section 3543.2 which defines the scope of representation.[6] This section includes "organizational security" within the meaning of "terms and conditions of employment"; the act further provides that an organizational security term of a collective bargaining agreement shall "become effective" upon agreement by the employer and bargaining agent and, where requested by the employer, ratification by a majority of the bargaining unit. (§ 3546.)

We look to section 3540.1, subdivision (i) only as it informs our understanding of the "organizational security" phrase found in sections 3543.2 and 3546. The phrase "condition of continued employment" in section 3540.1, subdivision (i)(2) is basically a textbook recital of an agency shop authorization. (See, e.g., *Labor Board* v. *General Motors* (1963) 373 U.S. 734 [10 L.Ed.2d 670, 83 S.Ct. 1453]; *Retail Clerks* v. *Schermerhorn* (1963) 373 U.s. 746 [10 L.Ed.2d 678, 83 S.Ct. 1461].) The meaning to which the respondents

---

[6]The Legislature manifested its own desire that the specific words of the section not form a straitjacket for negotiators by authorizing bargaining over "matters relating to . . . terms and conditions of employment" and thus giving parties some leeway within which to frame their agreements.

would confine us—termination upon nonpayment of fees—is simply the outer limit of acceptable agency shop provisions. As amici curiae, California Federation of Teachers and California State Council Service Employees International Union, suggest, "condition of employment" as used in the collective bargaining sphere necessarily includes the concept "obligation of employment." As we have seen, every term of a collective bargaining agreement is an obligation; section 3540.1, subdivision (i) simply indicates that the parties may provide for termination for violation of this particular duty. Indeed, frequently the courts have used the terms "obligation" and "condition" of continued employment interchangeably in examining agency shop requirements. (See *Bagnall* v. *Air Line Pilots Ass'n, Int'l* (4th Cir. 1980) 626 F.2d 336, 341, cert. den. 449 U.S. 1125 [67 L.Ed.2d 112, 101 S.Ct. 943]; *Marden* v. *International Association of Machinists* (5th Cir. 1978) 576 F.2d 576, 579.) A provision requiring nonunion members of a unit to pay a service fee is a matter pertaining to organizational security within the scope of the union's and the employer's bargaining authority.

The function of section 3540.1 within the act is definitional only. It does not of its own force provide remedies, much less exclusive remedies, for violations of collective bargaining agreements by individual members. Legislative silence on the subject of remedies does not, however, bar the instant suit; the absence of a particular remedy is not the same as the absence of a cause of action. "An obligation arising from operation of law may be enforced in the manner provided by law or by civil action or proceeding." (Civ. Code, § 1428.) Thus, a civil action is appropriate against one who violates a duty owed another which arises out of a "public policy statute" dealing with labor relations. (*Montalvo* v. *Zamora* (1970) 7 Cal.App.3d 69, 76 [86 Cal.Rptr. 401].) Under the labor relations system established for public education employees by the EERA, a collective bargaining agreement executed by an exclusive bargaining representative binds all the members of the unit as to all term within the organization's scope of representation. The organization may enforce through a civil action the agency shop obligations of individual employees arising out of that agreement.

The decision of the Michigan Court of Appeals in *Eastern Michigan University* v. *Morgan* (1980) 100 Mich.App. 219 [298 N.W.2d 886] is closely on point. The American Association of University professors, party to an agency shop agreement with Eastern Michigan University, sought damages and specific performance against an employee for failure to pay the service fee. The collective bargaining agreement provided that " '[t]he parties further agree that the only means for enforcement of the obligations specified herein are by civil action for damages or other equitable enforcement.' " (P. 888.) Michigan's equivalent of California's EERA provided in part "[t]hat nothing in this act . . . shall preclude a public employer from making an agreement with an exclusive bargaining representative . . . to require *as a condition of employ-*

*ment* that all employees in the bargaining unit pay to the exclusive bargaining representative a service fee equivalent to the amount of dues uniformly required of members of the exclusive bargaining representative . . . " (Mich. Comp. Laws Ann., § 423.210, italics added.)

The Michigan court upheld the union's right to file a civil suit against the employee as provided in the collective bargaining agreement. The court did not construe "as a condition of employment" as mandating dismissal to be the only remedy against the employee. "Section 10 of PERA does not require that an agreement put the nonunion employee on notice that he is subject to discharge if he fails to pay this fee. Although discharge is the sanction most often employed, it is definitely not mandated by the statute. 'When a statute provides a beneficial right but no civil remedy for its securance, the common law on its on [*sic*] hook provides a remedy, thus fulfilling law's pledge of no wrong without a remedy.' [Citations.] We agree that agency shop fees may be collected from objecting employees by means of a civil suit. . . . While § 10 of PERA does approve the requirement of payment of a service fee as 'a condition of employment,' we prefer to give this terminology a liberal interpretation. We do not construe this language as mandating discharge as the only remedy against one who refused to pay. . . . [Section] 10 of PERA does not mandate any one sanction. This section is, in fact, without its own enforcement mechanism." (*Id.*, at p. 890.)

Defendants seek to distinguish *Eastern Michigan University* by the fact that the collective bargaining agreement at issue here did not expressly contain a clause authorizing a civil suit. The agreement, however, does provide that "[t]he Association and not the District shall be responsible for requiring employees to fulfill their obligations . . . ." Since only the District can fire employees, this clause implies that the Association will enforce the agreement by a common law civil action.

Requiring dismissal of an employee is too drastic a measure for this court to endorse. In fact, a civil suit might even be a preferable method of enforcement of an agency shop clause. The employee who does not wish to join the union, or the employee who falls behind in paying union dues, should have the choice of paying the fees, facing civil suit, or terminating his or her employment. The employee might prefer to remain on the job, and face attachment of wages or property at a later date after a successful civil suit by the union.

Furthermore, the union and the District should be allowed to choose which remedy is deemed more appropriate. Such a policy would serve the purpose of the EERA "to promote the improvement of personnel management and employer-employee relations within the public school systems . . . ." (§ 3540.) Many factors need to be considered and weighed by the parties. For example, the union might find civil action to be too cumbersome, and prefer to

negotiate for mandatory dismissal. The District, on the other hand, may wish to leave enforcement completely in the hands of the union, as it did in the case at bar.[7] The District might also wish to avoid losing well-qualified teachers who could otherwise remain on the job during the pendency of a civil suit. From the employee viewpoint, animosity between union and nonunion employees could be lessened by using the remedy of a civil suit instead of loss of employment. We are therefore of the opinion that the remedy chosen should be a proper subject left to the bargaining table, unless the Legislature indicates otherwise in the future.

## III.

We are supported in our interpretation of section 3540.1, subdivision (i)(2) by both the Attorney General and the PERB.

The Attorney General recently considered whether termination of employment is possible under an agency shop agreement with a school district. In *Refusal of Classified Employee, etc.*, 60 Ops.Cal.Atty.Gen. 370 (1977), an agency shop agreement between the Woodland Joint Unified District and the CSEA provided that "as a condition of continued employment" a service fee be paid.[8] The employer was to enforce the agreement.[9] The Attorney General was asked to decide whether an employee could be terminated for failure to pay the service fee.

The Attorney General noted that the EERA does not supersede the Education Code and the rules and regulations of public school employers, so long as those rules and regulations do not conflict with the collective bargaining agreement.[10] Since the collective bargaining agreement did not contain an otherwise prevail-

---

[7] *In Detroit Bd. of Ed.* v. *Parks* (1980) 98 Mich.App. 22 [296 N.W.2d 815], an agency shop contract specified that employees must be discharged if they fail to join the union or pay the service fee. A nonunion teacher refused, and was subsequently discharged. In a footnote, the court noted that "there are two other methods of enforcing an agency shop clause and that one or the other of them must be resorted to in the case of the tenured teacher. Requiring the board and/or the [union] to institute a civil suit to recover agency shop fees from all objecting employees is too cumbersome a method of enforcing the declared public policy of this state. . . ." (P. 822, fn. 15.)

We must recognize, of course, that from the District's point of view, it might be too cumbersome for it to have the burden of discharging employees.

Furthermore, the union is concerned with receiving its fees; it is less interested in teachers being discharged.

[8] As mentioned in footnote 3, many of CSEA's collective bargaining agreements do not contain the phrase "as a condition of continued employment." In *Refusal*, the clause was contained in the agreement, but seems to make little difference in the Attorney General's analysis.

[9] "'The employer will enforce the requirements of this Article after notification from the Association when the employee has not complied with the provisions of this Article.'" (60 Ops.Cal.Atty.Gen. 370, 371, *supra*.) The employer was *not* specifically instructed to discharge the employee.

[10] ". . . Nothing contained herein shall be deemed to supersede other provisions of the Education Code and the rules and regulations of public school employers which establish and regulate

ing provision specifying dismissal of an employee for refusal to pay the service fee, he looked to those rules and regulations of the district which, as authorized by Education Code section 45101, subdivision (h), set forth the grounds for disciplinary action. Thus, the Attorney General necessarily concluded that when a school employees' collective bargaining agreement is silent as to the methods of enforcing an organizational security provision, discharge is possible only if authorized by a section of the Education Code.[11] This clearly indicates that (1) section 2340.1, subdivision (i)(2) does not require the remedy of dismissal, (2) the words "condition of continued employment" as set forth in that section and the collective bargaining agreement do not require the remedy of dismissal, and (3) dismissal itself is a permissive rather than mandatory remedy.[12]

We also give deference to an interpretation of section 3540.1, subdivision (i)(2) by the PERB. PERB is vested with the exclusive jurisdiction to make an initial determination of a charge of unfair labor practices. (§ 3541.5.) "[W]hen an administrative agency is charged with enforcing a particular statute, its interpretation of the statute will be accorded great respect by the courts 'and will be followed if not clearly erroneous. [Citations.]'" (*Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564], quoting *Bodinson Mfg. Co.* v. *California Employment Commission* (1941) 17 Cal.2d 321, 325 [109 P.2d 935].)

PERB recently rendered a decision in *Cumero* v. *King City High School District Assn.* (Mar. 3, 1982) PERB Decision No. 197,[13] in which an agency shop clause did not require payment of a service fee as a "condition of employment." The PERB held that the clause was nevertheless valid and, further, that termination of employment was not a mandatory method of enforcement. "We do not read section 3540.1(i)(2) as defining *only* permissible service fee ar-

---

tenure or a merit or civil service system or which provide for other methods of administering employer-employee relations, so long as the rules and regulations or other methods of the public school employer do not conflict with lawful collective agreements. . . ." (§ 3540.)

[11]No one appears to have questioned the validity of a bargaining agreement that was silent as to the method of enforcement.

[12]"The agreement, which places upon the district the duty to enforce payment as a condition of continued employment, requires the district, *at minimum, to order the employee to pay the fee.* Persistent refusal to comply with the order would constitute insubordination. To whatever extent this approach might prove inadequate, the district's obligation to enforce the organizational security provision would further require it to define expressly in its rules nonpayment as cause for discipline." (60 Ops.Cal.Atty.Gen. 370, 373, italics added.)

In other words, the first step would be to attempt to enforce the fee payment. Any further action should either be provided for in the District rules, or in the agency shop agreement.

[13]Both the PERB and charging party William J. Cumero have filed amici curiae briefs in the case at bar.

rangements. This language simply expresses the limits of the scope of negotiations on the subject of service fees. Just as this section permits service fees to equal membership dues, it *permits* enforcement through the termination provision. Just as this section permits the negotiation of agency fees which are less than membership dues, so it permits the negotiation of fees without the termination condition." (P. 34, italics in original.)

## IV.

Defendants nevertheless argue that a line of National Labor Relations Board (NLRB) cases dictate that dismissal is the sole remedy for failure to pay union dues, and that we should be bound thereby rather than follow our Attorney General and PERB decisions.[14] These cases, however, are easily distinguishable[15] because union shops, rather than agency shops, were involved; the agreement clauses all expressly provided for termination for noncompliance; and additional penalties were being invoked.

In *Krambo Food Stores, Inc.* (1953) 106 N.L.R.B. 870, the union agreement required that anyone working over 15 hours a week join the union as a condition of employment. Some workers failed to pay back union dues, and vacation pay was withheld from them. The NLRB held that this action was in violation of section 8, subdivisions (a)(1) and (3), and (b)(1) and (2) of the NLRA,[16] because nonunion members were being discriminated against, thus unlawfully encouraging union membership. "[E]mployers and unions [are not given] a license to use various discriminatory devices, short of discharge, to coerce an employee to join the union while still holding over his head the alternate threat of discharge which the statute sanctions." (*Id.*, at p. 877.)

Defendants claim that this "short of discharge" language means that discharge is the only remedy available against noncomplying workers. Yet, in a footnote appended to this language, the NLRB states, "[s]ince the issue is not here presented, we do not . . . pass on whether or not a lesser penalty would be

---

[14]Defendants seem to argue that California may permit agency shop agreements only because Congress in the National Labor Relations Act (NLRA) has "allowed" the states to adopt agency shop legislation. We choose not to decide whether the NLRA has any applicability to the case at bar, since it is not in issue. It may well be, however, that Congress has no power to regulate California state school employees. (See *National League of Cities* v. *Usery* (1976) 426 U.S. 833 [49 L.Ed.2d 245, 96 S.Ct. 2465].)

[15]Federal precedent is often referred to when parallel language in state labor legislation is being interpreted. (*Firefighters Union* v. *City of Vallejo* (1974) 12 Cal.3d 608, 616 [116 Cal. Rptr. 507, 526 P.2d 971]; *Englund* v. *Chavez* (1972) 8 Cal.3d 572, 576 [105 Cal.Rptr. 521, 504 P.2d 457]; *Petri Cleaners, Inc.* v. *Automotive Employees, etc., Local No. 88* (1960) 53 Cal.2d 455, 459 [2 Cal.Rptr. 470, 349 P.2d 76].)

[16]29 United States Code section 158(a)(1) and (3), and (b)(1) and (2).

permissible if coupled with clear abandonment of the right of discharge; nor do we pass on whether or not a lesser penalty could be inflicted only if provided for by a specific contract provision." (*Id.*, at p. 877, fn. 10.)

Regardless, *Krambo* is inapplicable to the case at bar. It did not involve an agency shop clause. Furthermore, the issue was discrimination under the NLRA, "the withholding of vacation benefits [which] was an *additional discrimination,* over and above the threat of discharge, and not a lesser one." (P. 878, italics in original.) In the case at bar, the civil suit was instituted *in lieu* of, rather than in addition to, discharge.

In another case, *Assn. of Western Pulp & Paper Workers* (1968) 170 N.L.R.B. 49, enforced (9th Cir. 1970) 431 F.2d 1206, the union shop clause required membership as a condition of continued employment. The union asked the employer to discharge two employees who were delinquent in paying their union dues. The employer did not do so immediately. The union then offered to withdraw its discharge demands if the employees were to pay their back dues, a reinstatement fee, and a fine of $100 each. The employees complied, and the union withdrew its demands for discharge.

The NLRB held that the payment of the $100 was not permitted by the NLRA, because it was an *additional* penalty. Thus, *Western Pulp* is also distinguishable, and does not help the defendants in the case at bar.

In fact, language in *Western Pulp* is favorable to the plaintiff rather than to defendants: "The *Krambo* dictum suggests that should a union abandon its right to invoke [the] supreme penalty [of extinguishing the employment relationship], it might be permitted to substitute a lesser penalty which would diminish, but not altogether extinguish, accrued employee benefits [such as taking away vacation pay or seniority]." (*Id.*, 170 N.L.R.B. at p. 52.) Thus, remedies other than discharge might be possible.

Other cases cited by the defendants suffer the same fate. (See *Kisco Co.* (1971) 192 N.L.R.B. 899 (vacation benefits cannot be withheld as additional penalty from an employee owing back union dues); *Plasterers' Local Union No. 908* (1970) 185 N.L.R.B. 879, enforced (8th Cir. 1972) 454 F.2d 285 (refusal to promote worker to foreman because he is nonunion is unlawful discrimination under the NLRA); *Reading Tube Corp.* (1958) 120 N.L.R.B. 1604 (denial of contract privileges and benefits is an unlawful additional discrimination under the NLRA).)

## V.

One final issue should be addressed. William Cumero, in his amicus curiae brief, claims that plaintiff Association failed to exhaust its administrative remedies. He argues that since PERB exercised jurisdiction over Cumero's claim in *Cumero* v. *King City High School District Assn., supra,* PERB Decision No. 197, which contained an issue dealing with an organizational security clause, it also had exclusive jurisdiction over the case at bar. He relies on *San Diego Teachers Assn.* v. *Superior Court* (1979) 24 Cal.3d 1 [154 Cal.Rptr. 893, 593 P.2d 838], which held that PERB had exclusive initial jurisdiction over whether a strike was an unfair practice,[17] and what remedy should be pursued.

We do not dispute that PERB has exclusive jurisdiction over issues concerning unfair labor practices. (§ 3541.5.)[18] The case at bar, however, does not involve a dispute over an unfair practice. Rather, at issue is whether the union, under the terms of the collective bargaining agreement, can file a civil suit against a noncomplying employee. *San Diego Teachers* did not address this issue. *Leek* v. *Washington Unified School District* (1981) 124 Cal.App.3d 43 [177 Cal.Rptr. 196], also cited in the amicus brief, fails to advance Cumero's theory for the same reason.

*Cumero* is also distinguishable because it additionally contained numerous issues involving unfair practices which were under the exclusive jurisdiction of PERB. The case at bar solely involves the issue of whether a civil suit may be a remedy for violation of the agreement by the employee.

In fact, PERB has no jurisdiction whatsoever to decide the Association's claims against the noncomplying employees. Section 3541.5, which vests exclusive jurisdiction over unfair practices only, also provides that PERB "shall not issue authority to enforce agreements between the parties, and shall not have a complaint on any charge based on alleged violation of such an agreement that would not also constitute an unfair practice under this chapter." (Subd. (b).) Thus, because no unfair practice has been claimed, PERB had no jurisdiction to hear the claims at bar—no administrative remedies were available to be exhausted.

In conclusion, we find that the union properly filed suit in the small claims court against the defendants. The judgment of the superior court is affirmed.

---

[17]Failure to negotiate in good faith and refusal to participate in the impasse procedure are unfair practices. (§ 3543.6, subds. (c) and (d).)

[18]"The initial determination as to whether the charges of unfair practices are justified, and, if so, what remedy is necessary to effectuate the purposes of this chapter, shall be a matter within the exclusive jurisdiction of the board. . . ."

Bird, C. J., Mosk, J., Richardson, J., Kaus, J., Reynoso, J., and Christian, J.,* concurred.

Respondent's petition for a rehearing was denied February 3, 1983, and the opinion was modified to read as printed above.

---

*Assigned by the Chairperson of the Judicial Council.