[No. A019503. First Dist., Div. Three. May 31, 1985.]

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,
Petitioner, v.
PUBLIC EMPLOYMENT RELATIONS BOARD, Respondent;
LABORERS LOCAL 1276, LIUNA, AFL-CIO, et al.,
Real Parties in Interest.

COUNSEL

Donald L. Reidhaar, James N. Odle, Susan M. Thomas and Edward M. Upton, Jr. for Petitioner.

Dennis M. Sullivan, Jeffrey Sloan, Elaine B. Feingold, Emily E. Vasquez, Andrea L. Biren, Marian Kennedy and Vladeck, Waldman, Elias & Englehard for Respondent.

Thomas Rankin, Mary M. Mocine, Mocine, Plotz & Eggleston, Stewart Weinberg and Van Bourg, Allen, Weinberg & Roger for Real Parties in Interest.

OPINION

**BARRY-DEAL, J.**—This petition by the Regents of the University of California (University) challenges a ruling by the Public Employment Relations Board (PERB or Board) that the University committed unfair labor practices. PERB's decision had two parts: (1) a ruling that a "nonexclusive" employee organization enjoyed the right of advance notice and discussion of employer work-rule changes; (2) a ruling that the University should have provided union access to workers in a high-security cafeteria at Lawrence Livermore Laboratory (Laboratory). When we first considered this petition, we denied it as to both issues. The California Supreme Court granted hearing and retransferred the matter with directions to grant a writ of review limited to the first issue. ■ After conducting the review, we conclude

that the Board erred in ruling that the employee organization enjoyed a right to advance notice and an independent right to discuss work-rule changes with the University.

In 1978, the Legislature adopted the Higher Education Employer-Employee Relations Act (HEERA or the Act) (Stats. 1978, ch. 744, § 3, p. 2312 et seq., codified in Gov. Code, § 3560 et seq.).[1] The Act granted collective bargaining rights to employees in the state university and the University of California systems.

The University is a higher education employer within the meaning of section 3562, subdivision (h), and employs higher education employees as defined in section 3562, subdivision (f), of the Act. Respondent PERB is the administrative agency charged with administering the provisions of the Act. (§ 3563.) Real parties in interest Laborers Local 1276, LIUNA, AFL-CIO (Laborers Local 1276) and Alameda County Building and Construction Trades Council (Building and Construction Trades Council) are employee organizations within the meaning of section 3562, subdivision (g), of the Act. Laborers Local 1276 first began organizing employees at the Laboratory in 1974. The Building and Construction Trades Council has represented employees at the Laboratory since 1972.

On August 27, 1979, real parties in interest filed an unfair practice charge with the Board alleging, inter alia, that they had been prevented from meeting and conferring with the employer regarding wages, hours, and other terms and conditions of employment. On September 19, 1979, the University filed an answer, raising the affirmative defense that pursuant to sections 3562, subdivision (d), and 3570, the University's obligation to meet and confer arises only upon certification of an employee organization as *exclusive representative* of an appropriate bargaining unit. The University asserted that it was precluded from meeting and conferring with real parties concerning matters within the scope of representation because such acts might constitute unfair labor practices.

A hearing was held on the matter on August 6, 11, 12, and 13, 1980. The hearing officer found that the University had committed an unfair labor practice by "unilaterally changing the past practice of providing advance notice of proposed changes in employment terms and conditions" and that that change had interfered with the exercise of employee organization rights.

The University filed exceptions to the proposed decision of the hearing officer. On April 30, 1982, the Board filed its decision affirming the decision

---

[1]All further statutory references are to the Government Code.

of the hearing officer with respect to this issue. One member of the Board dissented, reasoning that section 3570 of HEERA provides that higher education employers have the duty to meet and confer *only with exclusive representatives* on matters within the scope of representation, and that the University had no duty to notify and meet with real parties, who were nonexclusive representatives of higher education employees. The University moved for reconsideration, which request was denied. This petition followed.

Prior to the enactment of HEERA, the University labor-management relations had been governed by the provisions of the George Brown Act (§§ 3525-3536). The George Brown Act (Stats. 1971, ch. 254, § 6, pp. 403-405) granted state employees the ". . . right to form, join, and participate in the activities of employee organizations of their own choosing for the *purpose of representation* on all matters of employer-employee relations. . . ." (§ 3527, italics added.) "Employee organizations" were granted the ". . . *right to represent* their members in their employment relations, including grievances, with the state. . . ." (§ 3528, italics added.) The corresponding duty of the state was spelled out in section 3530 as follows: "The state . . . shall meet and confer with representatives of employee organizations *upon request,* and shall *consider as fully as such representatives deem reasonable such presentations* as are made by the employee organization on behalf of its members *prior to arriving at a determination of policy or course of action.*" (Italics added.)

The George Brown Act was limited in that it provided no mechanism for recognizing an employee organization as an exclusive representative, no authority to reach binding agreements, and no expert labor relations agency to oversee the process. (*Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 176 [172 Cal.Rptr. 487, 624 P.2d 1215].) During the time that the George Brown Act applied, the University regularly notified employee organizations representing Laboratory employees of proposed changes in terms and conditions of employment and often held "meet and confer" sessions with employee organizations to discuss the issues. When HEERA took effect, section 3526 of the George Brown Act was also amended to remove higher education employees covered by HEERA from coverage under the George Brown Act. (Stats. 1978, ch. 776, § 5.8, p. 2417.)

After July 1, 1979, the effective date of HEERA, the University stopped giving employee organizations advance notice of changes in working conditions and stopped holding formal "meet and confer" sessions with employee organizations. The University took the position that under newly enacted provisions of HEERA, it was not required to give notice to or to

meet and confer with an employee organization *not* designated as an exclusive representative and that to do so could result in the University being charged with an unfair labor practice for favoring one union over another.

The University contends that in enacting HEERA, the Legislature introduced a new scheme of labor relations to California public sector higher education and that, unlike predecessor statutes administered by the Board, HEERA contains no language conferring a right of representation upon nonexclusive representatives. The University suggests that the Board, in interpreting HEERA, "divines an implied legislative intent to include that which was omitted from HEERA." The University argues that an interpreter of a statute, whether a court or an administrative agency, cannot supply what the Legislature has omitted in an attempt to make the statute conform to a presumed intent of the Legislature which is not expressed in the statutory language.

The University relies upon the provisions of section 3570. Section 3570 of HEERA provides: "Higher education employers, or such representatives as they may designate, shall engage in meeting and conferring with the employee organization *selected as exclusive representative of an appropriate unit* on all matters within the scope of representation." (Italics added.)

Section 3562, subdivision (d), defines "meet and confer" as follows: "(d) 'Meet and confer' means the performance of the mutual obligation of the higher education employer and the *exclusive representative* of its employees to meet at reasonable times and to confer in good faith with respect to matters within the scope of representation and to endeavor to reach agreement on matters within the scope of representation. . . ." (Italics added.)

Section 3562, subdivision (j), defines an "exclusive representative" as follows: "(j) 'Exclusive representative' means any recognized or certified employee organization or person it authorizes to act on its behalf."

Section 3573 specifies the procedure whereby an employee organization may become an exclusive representative: "An employee organization may become the exclusive representative for the employees of an appropriate unit for purposes of meeting and conferring by filing a request with a higher education employer alleging that a majority of the employees in an appropriate unit wish to be represented by such organization and asking the employer to recognize it as the exclusive representative. . . ."

The Board acknowledges that the framework of HEERA allows higher education employees to select one employee organization to be the exclusive

representative (§§ 3573-3578), and that only the exclusive representative is authorized to "meet and confer" with a higher education employer with the goal of executing a collective bargaining agreement (§§ 3562, 3570). The Board notes, however, that there are two time periods during which only nonexclusive representatives will be present at a University workplace: (1) *prior* to certification of the exclusive representative, when organizational support is being sought and elections are being held; and (2) *after* an election in which a majority of the employees have voted for "no representation." The Board argues that it is reasonable to conclude that nonexclusive representatives have a statutory right to be notified about intended changes in employment conditions and the concomitant right to discuss such changes with employers during these two critical periods.

In so ruling, the Board reasoned that real parties and their employee members enjoyed important representational rights under the George Brown Act, and that HEERA's language and overall statutory scheme indicated that the Legislature intended to expand representational rights, not to "consign nonexclusive representatives to a state of powerless limbo." The Board found that HEERA's express provisions indicated a legislative intent to preserve representational rights for the employees and employee organizations *until such time as an exclusive representative was selected.*

The Board, in finding a requirement of prior notice and opportunity to meet and discuss, concluded that the Legislature's use of the word "and" in section 3560, subdivision (e), and section 3565 to separate meeting and conferring from other representational functions indicated an intent to authorize representation prior to the selection of the exclusive representative, and that the definition of "employee organization" indicated that the Legislature contemplated that nonexclusive representatives would "deal . . . with" the higher education employer regarding employment matters. (§ 3562, subd. (g).)

We agree with the Board's conclusion that a nonexclusive union may play a significant role before selection of an exclusive representative. We disagree with the Board's creation of a "right to represent" where the Legislature failed to establish such a right.

Although the legislative history is scant, it appears that HEERA was patterned after the Educational Employment Relations Act (EERA) (Stats. 1975, ch. 961, § 2, p. 2247 et seq., codified in § 3540 et seq.), which established formal negotiating rights for public school employees and created the Educational Employment Relations Board (EERB), subsequently renamed the Public Employment Relations Board (PERB), to enforce the

act. In 1977, the Legislature adopted the State Employer-Employee Relations Act (SEERA) (Stats. 1977, ch. 1159, § 4, p. 3751 et seq., codified in § 3512 et seq.) to provide formal collective bargaining rights to state employees, but employees of the University of California, Hastings College of the Law, and the California State University were excepted from its coverage (§ 3526, subd. (c)).

In enacting HEERA, the Legislature, after noting that all other employees of the public school systems in the state had been granted the opportunity for collective bargaining, found it desirable to expand the jurisdiction of the Board to cover the employees of the University of California, Hastings College of the Law, and the California State University. (§ 3560.)

Section 3560, subdivision (e), of HEERA provides: "(e) It is the purpose of this chapter to provide the means by which relations between each higher education employer and its employees may assure that the responsibilities and authorities granted to the separate institutions under the Constitution and by statute are carried out in an atmosphere which permits the fullest participation by employees in the determination of conditions of employment which affect them. It is the intent of this chapter to accomplish this purpose by providing a uniform basis for recognizing the *right of the employees* of these systems to full freedom of association, self-organization, and *designation of representatives of their own choosing for the purpose of representation in their employment relationships with their employers and to select one of these organizations as their exclusive representative for the purpose of meeting and conferring.*" (Italics added.)

Section 3565 of HEERA provides: "Higher education employees shall have the right to form, join and participate in the activities of employee organizations of their own choosing *for the purpose of representation on all matters of employer-employee relations and for the purpose of meeting and conferring.* Higher education employees shall also have the right to refuse to join employee organizations or to participate in the activities of these organizations subject to the organizational security provision permissible under this chapter." (Italics added.)

Section 3562, subdivision (g), defines an employee organization as follows: "(g) 'Employee organization' means any organization of any kind in which higher education employees participate and which exists for the purpose, in whole or in part, of *dealing with higher education employers concerning grievances, labor disputes, wages, hours, and other terms and conditions of employment of employees. . . .*" (Italics added.)

HEERA is significant not so much for what it provides as for what was omitted. Beginning in 1971 with the George Brown Act, the Legislature established a pattern of providing for the employees' rights and the employee organizations' rights in two successive code sections: first, the employees' right to ". . . form, join, and participate in the activities of employee organizations of their own choosing for the purpose of representation on all matters of employer-employee relations . . ." (§ 3527); and then, in the next code section, that the "[e]mployee organizations shall have the right to represent their members in their employment relations, . . ." (§ 3528.) This quoted language was used again in sequential code sections in EERA (adopted in 1975) (§§ 3543, 3543.1) and in SEERA (adopted in 1977) (§§ 3515, 3515.5). In each case other portions of the sections differed, but the operative language quoted above was identical.

HEERA, adopted one year after SEERA, used the quoted language to establish the right of *employees* to form, join, and participate in employee organizations (§ 3565), but omitted entirely the provision establishing the *employee organization's* right to represent. Significantly, the Legislature left section 3566 blank[2] and added in section 3567 a different statement of employee rights: "Any employee or group of employees may at any time, either individually or through a representative of their own choosing, present grievances to the employer and have such grievances adjusted, without the intervention of the exclusive representative; . . ." Later in the Act, the Legislature revealed that it had not forgotten the formula for its three previous public employment enactments, because it again used the quoted language from the George Brown Act, amending it to apply to "supervisory employees." It established both the supervisory employees' right to "form, join, and participate" (§ 3581.1) and the organization's right to represent supervisory employees in higher education (§ 3581.2).

We cannot agree with the Board's conclusion that HEERA's omission of a "right to represent" was without significance. It is true that we must accord great respect to an administrative agency's interpretation of the statute it is charged with enforcing. (*San Lorenzo Education Assn.* v. *Wilson* (1982) 32 Cal.3d 841, 850 [187 Cal.Rptr. 432, 654 P.2d 202]; *Oakland Unified School Dist.* v. *Public Employment Relations Bd.* (1981) 120 Cal.App.3d 1007, 1012 [175 Cal.Rptr. 105].) But upholding such a reading would go well beyond respect for the agency's interpretation. It would au-

---

[2]In 1982, the Legislature made use of section 3566 to empower the Trustees of the California State University to adopt rules and regulations for registering and determining the status of employee organizations and for identifying their officers. (Stats. 1982, ch. 1270, § 21, p. 4690.) It took no steps to provide employee organizations with a "right to represent."

thorize the Board to rewrite the statute to suit its notion of what the Legislature must have intended to say about organizational rights. It would do this in the face of strong evidence of a contrary legislative intent: the Legislature's use of the same construction in four different pairs of statutes, and its failure to use that construction in the statute under scrutiny. The Legislature would be rendered nearly powerless to make changes in the law if we were to permit the Board to interpret this obvious change as an attempt to continue the same legal relationships established in the George Brown Act, EERA, and SEERA.[3]

The remaining question is: what effects flow from the Legislature's omission of a "right to represent"? Does the omission "consign nonexclusive representatives to a state of powerless limbo," as feared by the Board? Or does it merely shift the emphasis from the employee organizations to the employees themselves?

We read the legislative omission as merely shifting emphasis. The nonexclusive employee organization may continue to represent its members in many ways, but the initiative for representation must come from the employee. The employee has a right to be represented, but the organization does not have an *independent* right to represent.

We agree with the University that the findings of fact by the hearing officer, which were adopted by the Board, demonstrate that the University's practices are consistent with the rights granted under HEERA. Under these practices, the University notifies individual employees of proposed changes in employment conditions and, if the employee chooses to have his or her union meet with the employer to discuss the changes, such meetings are held upon request. This approach acknowledges the right of the employee to be represented by the employee organization of his or her choice on "all matters of employer-employee relations" (§ 3565), but does not grant to the organization independent rights not bestowed by the Legislature. The rights of the nonexclusive employee organizations, to the extent they exist, are derivative; they are the rights of an agent or representative of the employee.

---

[3]Knowing the sheer volume of legislation considered by the state Legislature, we cannot completely discount the possibility of inadvertent oversight. But we would convert statutory interpretation into a roulette game if we were to speculate on whether this was an occasion of legislative oversight or a deliberate omission.

The Board erred in finding an unfair practice based upon the University's failure to give notice to employee organizations. Its decision on that issue is set aside.

White, P. J., and Scott, J., concurred.