BILL LOCKYER Attorney General ANTHONY S. DA VIGO Deputy Attorney General
THE HONORABLE CHUCK CAKE, ACTING DIRECTOR OF THE DEPARTMENT OF INDUSTRIAL RELATIONS, has requested an opinion on the following question:
May the Division of Conciliation of the Department of Industrial Relations conduct an agency shop election during the term of an existing memorandum of understanding between a public agency and a recognized employee organization that contains a "modified" agency shop provision?
 CONCLUSION
The Division of Conciliation of the Department of Industrial Relations may conduct an agency shop election during the term of an existing memorandum of understanding between a public agency and a recognized employee organization that contains a "modified" agency shop provision if the current agency shop provision is first rescinded by the employees or first removed from the agreement by negotiation.
 ANALYSIS
We are informed that a county and a union which represents certain classes of county employees have entered into an agreement that in part requires county employees of the classes represented to be either members of the union or to pay a "service fee" to the union equal to regular union membership dues. Excluded from the union membership or alternative service fee requirement are employees who were hired by the county prior to May 11, 1999.
The question presented for resolution is whether the county employees covered by the agreement may change the union membership or service fee provision while the overall agreement, known as a memorandum of understanding ("MOU"), is in force. We conclude that the employees, by majority vote, may change the provision by first rescinding the current provision or it is first removed from the MOU by negotiation between the county and the union.
The Legislature has enacted a comprehensive statutory scheme, the Meyers-Milias-Brown Act (Gov. Code, §§ 3500-3511; "Act"),[1]
governing employment relations between local public agencies and their employees. (See Service Employees Internat. Union v. City of Santa Barbara (1997) 57 Cal.App.4th 654, 657-658.) Recognized employee organizations have the right to represent their members in their employment relations with public agencies on matters relating to employment conditions, including wages, hours and other terms and conditions of employment. (§§ 3503, 3504.) Public agencies and recognized employee organizations have the mutual obligation to meet and confer in good faith in order to reach an agreement memorialized in an MOU. (§§ 3505, 3505.1.)
Public employees have the right to join a union of their choosing and the right not to join a union. (§ 3502.) An employee who chooses not to join may be required to pay a "service fee" to the union "in an amount not to exceed the standard initiation fee, periodic dues, and general assessments of the organization." (§ 3502.5, subd. (a); see San Lorenzo Education Assn. v. Wilson (1982) 32 Cal.3d 841, 844 ["`employees who receive the benefits of union representation [may be required to] contribute their share of financial support to such union'"].) A provision in an MOU that mandates union membership or a service fee assessment is commonly known as an "agency shop" provision. (Id. at p. 843, fn. 1.) "`[A]n agency shop' means an arrangement that requires an employee as a condition of continued employment, either to join the recognized employee organization, or to pay the organization a service fee. . . ." (§ 3502.5, subd. (a).) An agency shop provision that excludes employees hired before a specified date is known as a "modified" agency shop provision.
The focus of our analysis is upon the terms and conditions of section3502.5, which provide:
 "(a) Notwithstanding Section 3502 or 3502.6, or any other provision of this chapter, or any other law, rule, or regulation, an agency shop agreement may be negotiated between a public agency and a recognized public employee organization which has been recognized as the exclusive or majority bargaining agent pursuant to reasonable rules and regulations, ordinances, and enactments, in accordance with this chapter. As used in this chapter, `agency shop' means an arrangement that requires an employee, as a condition of continued employment, either to join the recognized employee organization, or to pay the organization a service fee in an amount not to exceed the standard initiation fee, periodic dues, and general assessments of the organization.
 "(b) In addition to the procedure prescribed in subdivision (a), an agency shop arrangement between the public agency and a recognized employee organization that has been recognized as the exclusive or majority bargaining agent shall be placed in effect, without a negotiated agreement, upon (1) a signed petition of 30 percent of the employees in the applicable bargaining unit requesting an agency shop agreement and an election to implement an agency fee arrangement, and (2) the approval of a majority of employees who cast ballots and vote in a secret ballot election in favor of the agency shop agreement. The petition may only be filed after the recognized employee organization has requested the public agency to negotiate on an agency shop arrangement and, beginning seven working days after the public agency received this request, the two parties have had 30 calendar days to attempt good faith negotiations in an effort to reach agreement. An election that may not be held more frequently than once a year shall be conducted by the Division of Conciliation of the Department of Industrial Relations in the event that the public agency and the recognized employee organization cannot agree within 10 days from the filing of the petition to select jointly a neutral person or entity to conduct the election. In the event of an agency fee arrangement outside of an agreement that is in effect, the recognized employee organization shall indemnify and hold the public agency harmless against any liability arising from any claims, demands, or other action relating to the public agency's compliance with the agency fee obligation.
 "(c) Any employee who is a member of a bona fide religion, body, or sect that has historically held conscientious objections to joining or financially supporting public employee organizations shall not be required to join or financially support any public employee organization as a condition of employment. The employee may be required, in lieu of periodic dues, initiation fees, or agency shop fees, to pay sums equal to the dues, initiation fees, or agency shop fees to a nonreligious, nonlabor charitable fund exempt from taxation under Section 501 (c)(3) of the Internal Revenue Code, chosen by the employee from a list of at least three of these funds, designated in a memorandum of understanding between the public agency and the public employee organization, or if the memorandum of understanding fails to designate the funds, then to any such fund chosen by the employee. Proof of the payments shall be made on a monthly basis to the public agency as a condition of continued exemption from the requirement of financial support to the public employee organization.
 "(d) An agency shop provision in a memorandum of understanding that is in effect may be rescinded by a majority vote of all employees in the unit covered by the memorandum of understanding, provided that: (1) a request for such a vote is supported by a petition containing the signatures of at least 30 percent of the employees in the unit; (2) the vote is by secret ballot; (3) the vote my be taken at any time during the term of the memorandum of understanding, but in no event shall there be more than one vote taken during that term. Notwithstanding the above, the public agency and the recognized employee organization may negotiate, and by mutual agreement provide for, an alternative procedure or procedures regarding a vote on an agency shop agreement. The procedures in this subdivision are also applicable to an agency shop agreement placed in effect pursuant to subdivision (b).
 "(e) An agency shop arrangement shall not apply to management, confidential, or supervisory employees.
 "(f) Every recognized employee organization that has agreed to an agency shop provision or is a party to an agency shop arrangement shall keep an adequate itemized record of its financial transactions and shall make available annually, to the public agency with which the agency shop provision was negotiated, and to the employees who are members of the organization, within 60 days after the end of its fiscal year, a detailed written financial report thereof in the form of a balance sheet and an operating statement, certified as to accuracy by its president and treasurer or corresponding principal officer, or by a certified public accountant. An employee organization required to file financial reports under the federal Labor-Management Disclosure Act of 1959 (29 U.S.C. § 401 et seq.) covering employees governed by this chapter, or required to file financial reports under Section 3546.5, may satisfy the financial reporting requirement of this section by providing the public agency with a copy of the financial reports."[2]
In examining the language of section 3502.5, we may apply well recognized principles of statutory interpretation. In construing a statute, we are "`to ascertain the Legislature's intent so as to effectuate the purpose of the law.'" (Curie v. Superior Court (2001)24 Cal.4th 1057, 1063.) "In determining intent, we look first to the words of the statute, giving the language its usual, ordinary meaning." (Hunt v. Superior Court (1999) 21 Cal.4th 984,1000.) If the Legislature has provided an express definition of a term, that definition is ordinarily to be followed. (Adoption of Kelsey S. (1992) 1 Cal.4th 816, 826.) Portions of a statute are to be considered in the context of the entire statute, harmonizing and giving significance to every word, phrase, sentence and part in pursuance of the legislative purpose. (DuBois v. Workers' Comp. Appeals Bd. (1993) 5 Cal.4th 382, 388; People v. Hull (1991) 1 Cal.4th 266, 272.) "Committee reports are often useful in determining the Legislature's intent. [Citation.]" (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1977) 14 Cal.4th 627, 646.) Finally, "a practical construction is preferred." (California Correctional Peace Officers Assn. v. State Personnel Bd. (1995) 10 Cal.4th 1133, 1147.)
Applying these principles of statutory construction, we first note that a "modified" agency shop provision comes within the terms of section3502.5, meeting the definition contained in subdivision (a) of "an arrangement that requires an employee, as a condition of continued employment, either to join the recognized employee organization, or to pay the organization a service fee. . . ." (Italics added.) Not all employees are required to join the union or pay a service fee under the statute. For example, employees are to be excluded if they object to union membership based upon religious grounds (§ 3502.5, subd. (c)) or if they are "management, confidential, or supervisory employees" (§ 3502.5, subd. (e)).
It is clear from the legislative history of section 3502.5 that the employee election procedures of subdivision (b) were added to the statute to deal with situations where the negotiated MOU procedures specified in subdivision (a) proved to be unsuccessful. When section 3502.5 was amended in 2000 (Stats. 2000, ch. 901, § 3) to add subdivision (b), the purposes of the proposed legislation were stated in the legislative committee reports as follows:
 "1. Some public agency employers unfairly withhold or refuse agreement on agency fee arrangements despite a significant interest demonstrated by employees.
 "2. The existing [statutory] provisions are said to provide employers with an unfair veto authority over such arrangements.
 "3. This bill provides employees with an alternative process to obtain an agency fee agreement through a fair, democratic process." (Sen. Rules Com., Office of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 739 (1999-2000 Reg. Sess.) as amended May 13, 1999, p. 3.)
It is only after the public agency and the union have failed to reach an agreement that an employee election may be conducted by the Division of Conciliation of the Department of Industrial Relations ("Division"). (§ 3502.5, subd. (b).) Accordingly, while the Legislature has indicated its preference for collective bargaining, the employees of a public agency may nonetheless adopt unilaterally an agency shop provision when the bargaining process has proved unsuccessful.
It is evident that as long as the MOU containing an agency shop provision is in force, a conflicting agency shop provision may not be approved by the employees. However, the Legislature has authorized the employees covered by an MOU to approve a new agency shop provision after first rescinding the current provision. Rescission is accomplished "by a majority vote of all the employees in the unit covered by the memorandum of understanding." (§ 3502.5, subd. (d).) of course, the public agency and the union may also negotiate the removal of an agency shop provision during the term of the MOU. Upon removal, a majority of the employees may approve a new agency shop provision. (§ 3502.5, subd. (b).) This procedure prevents conflicting agency shop requirements and gives substance to each of the subdivisions of section 3502.5, harmonizing them in light of the evident legislative purpose. (See Service Employees Internat. Union v. City of Santa Barbara, supra, 57 Cal.App.4th at p. 659 ["stability, peace and majority rule are preserved" by the terms of section 3502.5].)
In summary, the employees of a public agency may control whether they have an agency shop provision in their MOU and what the terms and conditions of the provision should be. If they are dissatisfied with the provision negotiated on their behalf by their union, they may rescind it and adopt another provision with different terms and conditions. The only difference between a negotiated provision and an employee election provision is that in the latter situation, "the recognized employee organization shall indemnify and hold the public agency harmless against the liability arising from any claims, demands, or other action relating to the public agency's compliance with the agency fee obligation." (§ 3502.5, subd. (b).) This indemnification requirement protects the public agency in the circumstances where it has not negotiated and agreed to the particular agency shop provision.[3]
We conclude that the Division may conduct an agency shop election during the term of an existing MOU between a public agency and a recognized employee organization containing a "modified" agency shop provision if the current agency shop provision is first rescinded by the employees or first removed from the MOU by negotiation.
[1] All section references hereafter are to the Government Code.
[2] As previously indicated, section 3502 gives local public employees the right to join a union and the right not to join a union. There is no section 3502.6. Section3546.5 requires financial reports to be prepared by employee organizations representing public school employees.
[3] The employees may rescind an agency shop provision they have approved under subdivision (b) just as they may rescind such a provision negotiated under subdivision (a). (§ 3502.5, subd. (d).)