[L.A. No. 32300. Mar. 7, 1988.]

BANNING TEACHERS ASSOCIATION, CTA/NEA, Petitioner, v. PUBLIC EMPLOYMENT RELATIONS BOARD, Respondent; BANNING UNIFIED SCHOOL DISTRICT, Real Party in Interest.

Counsel

Charles R. Gutafson, Kirsten L. Zerger, A. Eugene Huguenin, Jr., and Rosalind D. Wolf for Petitioner.

Jeffrey Sloan and Martin Fassler for Respondent.

Stewart Weinberg, Van Bourg, Weinberg, Roger & Rosenfeld, James P. Jackson, City Attorney (Sacramento), and William P. Carnazzo, Deputy City Attorney, as Amici Curiae on behalf of Respondent.

Atkinson, Andelson, Loya, Ruud & Romo, Ronald C. Ruud, Karen E. Gilyard and Tina L. Kannarr for Real Party in Interest and as Amici Curiae on behalf on Respondent.

## Opinion

PANELLI, J.—We granted review to consider whether a parity or "me-too" agreement between a school district and its classified staff violates the provisions of sections 3545 and 3543.5 of the Government Code.[1] Spe-

[1] All statutory references hereafter are to the Government Code unless otherwise indicated.

cifically, does a parity agreement violate subdivision (b)(3) of section 3545, requiring that classified and certificated employees not be included in the same bargaining unit,[2] or subdivision (c) of section 3543.5, requiring that a school district negotiate in good faith with its certificated employees?[3] We conclude that parity agreements are not per se violative of either statute.

FACTUAL AND PROCEDURAL BACKGROUND

The Banning Unified School District (District) and the Banning Teachers Association, California Teachers Association/National Education Association (Teachers Association), as exclusive representative of the District's certificated employees unit, entered into a collective bargaining agreement covering the period of February 1981 to June 1984. Pursuant to reopener language in the agreement, in May 1983 the parties began negotiations on the subjects of salaries, fringe benefits, grievance procedures, and hours of employment for the 1983-1984 school year.

In September 1983, before the District-Teachers Association negotiations concluded, the District and the representative of the District's classified employees who are members of the classified bargaining unit reached a "parity agreement" on salaries. The agreement provided: "Salary: Effective July 1, 1983[,] 5% applied to base schedule plus $13,000 to be applied to range adjustments for these departments, maintenance, grounds, transportation, mechanic, and custodians. Agree that any other unit receiving a higher salary increase than this agreement stipulates, this unit will be adjusted to the higher amount."

On November 18, 1983, the District presented the Teachers Association with its "last, best, and final" offer, which included proposals for an 8 percent salary increase, fringe benefits, grievance procedure, and employment hours. The Teachers Association refused the District's request to take the offer to the general membership for secret ballot. Thereafter, the District by-passed the Teachers Association and itself distributed the offer directly to members.

---

[2] Section 3545, subdivision (b) provides in pertinent part: "In all cases . . . (3) Classified employees and certificated employees shall not be included in the same negotiating unit."

Education Code section 44006 defines certificated employee as follows: "The term 'certificated person' refers to a person who holds one or more documents such as a certificate, a credential, or a life diploma, which singly or in combination license the holder to engage in the school service designated in the document or documents." Education Code section 41401 defines classified employee as follows: " 'Classified employee' means an employee of a school district, employed in a position not requiring certification qualifications."

[3] Section 3543.5 provides in pertinent part: "It shall be unlawful for a public school employer to: . . . (c) Refuse or fail to meet and negotiate in good faith with an exclusive representative."

On November 24, 1983, the District informed the representative of the classified employees that, pursuant to the parity agreement, their wages would be adjusted to meet the terms of the District's offer to the certificated employees. The Teachers Association then filed an unfair practice charge with the Public Employment Relations Board (PERB), alleging the following violations of section 3543.5: (1) the District's proposed salary increase to classified employees violated subdivisions (a), (b), and (c); (2) the District's circulation of the offer to Teachers Association members violated subdivisions (a), (b), and (c); and (3) the District's proposal as to grievance procedures violated subdivision (c).[4]

PERB dismissed without hearing all but the first charge. As to the first charge PERB issued a complaint based on the Teachers Association's allegations that the parity agreement violated section 3543.5. By agreement of the parties, the case was submitted on the complaint and answer and on briefs to be filed by the parties. In its brief, the Teachers Association made the additional allegation that the parity agreement violated the separate unit requirement of section 3545, subdivision (b)(3). The administrative law judge (ALJ), by proposed decision, found that neither parity agreements per se, nor the present agreement in particular, violates the statutory separation of certificated and classified negotiating units or abrogates an employer's duty to bargain in good faith. The Teachers Association filed exceptions to the proposed decision.

By opinion filed on November 18, 1985, PERB agreed with the ALJ that parity clauses are not per se unlawful under the Education Employment Relations Act (EERA). PERB concluded that the legality of parity agreements should be decided on a case-by-case basis and that here the evidence did not support a finding that the District engaged in bad faith collective bargaining with its employees.

Pursuant to section 3542, subdivision (b), the Teachers Association petitioned for review. The Court of Appeal annulled the PERB order and remanded the case to PERB for further proceedings. The court majority held that parity agreements per se violate sections 3545, subdivision (b)(3) and 3543.5, subdivision (c). The court also held that PERB erred in finding the legality of such agreements should be decided on a case-by-case basis.

---

[4]Section 3543.5 provides in part: "It shall be unlawful for a public school employer to:

"(a) Impose or threaten to impose reprisals on employees, to discriminate or threaten to discriminate against employees, or otherwise to interfere with, restrain, or coerce employees because of their exercise of rights guaranteed by this chapter.

"(b) Deny to employee organizations rights guaranteed to them by this chapter.

"(c) Refuse or fail to meet and negotiate in good faith with an exclusive representative."

## DISCUSSION

The EERA establishes a system of collective bargaining for employees of public school districts serving students in grades kindergarten through 14. Enacted in 1975 (Stats. 1975, ch. 961, § 2, p. 2247, operative July 1, 1976; codified as §§ 3540-3549.3), the EERA requires school districts to negotiate in good faith with duly selected exclusive representatives of its employees as to appropriate statutorily defined subjects within the scope of representation. (§§ 3543.3, 3543.5.)

The EERA created PERB as an independent board of three members[5] and vested it with a broad spectrum of powers and duties, including the responsibility to investigate unfair practice charges or alleged violations of the EERA and "take such action and make such determinations in respect of these charges or alleged violations as the board deems necessary to effectuate the policies of this chapter." (§ 3541.3, subd. (i).) Thus, interpretation of the statutory provisions requiring single unit bargaining and good faith negotiation by the District fall within PERB's legislatively designated field of expertise.

■ PERB has a specialized and focused task—"to protect both employees and the state employer from violations of the organizational and collective bargaining rights guaranteed by the [EERA]." (*Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 198 [172 Cal.Rptr. 487, 624 P.2d 1215].) As such, PERB is "one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect." (*Universal Camera Corp.* v. *Labor Bd.* (1951) 340 U.S. 474, 488 [95 L.Ed. 456, 467, 71 S.Ct. 456].) "[T]he relationship of a reviewing court to an agency such as PERB, whose primary responsibility is to determine the scope of the statutory duty to bargain and resolve charges of unfair refusal to bargain, is generally one of deference" (*Oakland Unified School Dist.* v. *Public Employment Relations Bd.* (1981) 120 Cal.App.3d 1007, 1012 [175 Cal.Rptr. 105]), and PERB's interpretation will generally be followed unless it is clearly erroneous. (*J.R. Norton Co.* v. *Agricultural Labor Relations Bd.* (1979) 26 Cal.3d 1, 29 [160 Cal.Rptr. 710, 603 P.2d 1306]; *Judson Steel Corp.* v. *Workers' Comp. Ap-*

[5] PERB received its current title, changed from the Educational Employment Relations Board, in 1977 when the board was given jurisdiction to administer state employer-employee relations pursuant to chapter 10.3. (§ 3513, subd. (g); enacted by Stats. 1977, ch. 1159, § 4, p. 3751, operative July 1, 1978.) Membership was increased to five effective July 1980. (§ 3541 as amended Stats. 1980, ch. 666, § 1, urgency eff., July 20, 1980; Stats. 1980, ch. 1088, § 1; Stats. 1983, ch. 803, § 2, p. 2932.)

*peals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564], quoting *Bodison Mfg. Co.* v. *California E. Com.* (1941) 17 Cal.2d 321, 325 [109 P.2d 935].)

We believe the Court of Appeal failed to give PERB's decision the proper deference. The Court of Appeal applied a per se rule to parity agreements in part because, the court urged, a case-by-case approach "severely hampers effective judicial review." A per se rule, adopted to spare the reviewing court the task of examining claims on a case-by-case basis, deprives PERB of its statutory function to investigate, determine, and take action on unfair practice charges to effectuate the policy of the EERA and violates the established principle of judicial review that an administrative agency's interpretation is entitled to deference. (§ 3541.3, subds. (b) and (i).) As Justice McDaniel stated in dissent, "[b]y rejecting PERB's case-by-case approach, on the theoretical level, the majority has substituted its preference as well as opinions from foreign jurisdictions for PERB's expertise, and on the practical level, the majority has sharply limited PERB's 'broad powers and duties . . . to oversee and facilitate the negotiating process established by the [Education Employment Relations] Act.' "

## The Separate Unit Requirement

■ Section 3545, subdivision (b)(3) requires that classified and certificated employees be in separate bargaining units. The Court of Appeal concluded that parity agreements intrude on the statutory requirements and "attempt to erode the separation [of interests and bargaining abilities] by creating equal percentage increases in wages for the two separate bargaining units which are prohibited from bargaining as a single unit." In the Court of Appeal's view, parity agreements effectively include the first unit's wages as an issue in the second unit's negotiations, thereby impermissibly linking the two units which by statute must be kept apart. The Court of Appeal reasoned that a school district has a finite financial capacity to pay salaries, wages, and fringe benefits and that its financial resources must be allocated between the certificated, classified, and other employees by contract between the employer and each of the bargaining units negotiating separately. Each bargaining unit seeks as large a share of the financial resources available as possible for the individuals it is designated to represent. If one bargaining unit obtains an automatic wage increase for its members, that increase necessarily affects the resources available to the other units.

The Court of Appeal referred to *Loc. 1219, Intern., Fire Fighters* v. *Ct.L.R.B.* (1976) 171 Conn. 342 [370 A.2d 952], in which a statute provided for the separation of police and fire fighter units. In that case a fire fighter

unit secured a parity agreement for wage, overtime, and vacation benefits equal to those secured by the police officers' unit. The Supreme Court of Connecticut upheld the labor board's refusal to enforce the agreement, reasoning that "the police union's right to bargain has been completely taken from it. By voiding parity clauses in circumstances similar to those found in the present case, the defendant board preserves the wall of separation mandated by the statute. The [board's] action will also ensure that the units will be allowed to tie themselves to a rule of equality only if each unit agrees with the other that their interests are the same." (*Loc. 1219, supra,* 370 A.2d 952, 957.)

We are not convinced by either the Court of Appeal argument or the Connecticut decision. In our view, PERB has the better argument. As PERB stated, "[o]ne of the realities of the collective bargaining process is that multi-unit employers must consider the effect of one bargaining unit's contract on the other units, and that parity clauses reflect this need."

The Teachers Association does not contend that employers may not legitimately bring to the bargaining table an interest in achieving uniform salary increases or that such interest violates the statutory mandate not to include classified employees and certificated employees in the same bargaining unit. Rather, it asserts that committing such an interest to a written agreement somehow transforms it into a delegation of the duty to negotiate for wages and benefits of the classified unit members as well as for those of the teachers. As PERB noted: "It is indeed incongruous to suggest . . . that the employer may legitimately bargain for parity in fact, but may not properly include a parity clause in a collective bargaining agreement."

Here each unit negotiated on its own behalf. The parity agreement did not require the Teachers Association to negotiate on behalf of the classified unit. The salary increase for which the Teachers Association bargained, as the Court of Appeal dissent points out, may "incidentally" benefit the classified unit, even though the Teachers Association did not in fact bargain on behalf of the classified unit to obtain the bargained-for item. However, such incidental benefit does not violate the section 3545 mandate to maintain separate negotiating units. Thus, PERB's decision that parity agreements per se or the parity agreement here do not "break down the 'walls of separation' between the classified and certificated units" was a proper exercise of its discretion in interpreting EERA.

*The District's Duty to Negotiate in Good Faith*

Section 3543.5, subdivision (c) requires the school district to negotiate in good faith. In the proper exercise of its discretion, PERB again

found no evidence on which to base a finding that by entering into the parity agreement here the District contravened this statute. The Teachers Association argues that a parity agreement with the first unit is a unilateral action as to the second unit, disapproved by PERB in *San Mateo Community College District* (1979) PERB Dec. No. 94 [3 PERC ¶ 10080].

■ In determining whether an employer practice is per se an illegal unilateral action, the question is whether "[u]nilateral action by an employer . . . amount[s] to a refusal to negotiate about the affected conditions of employment under negotiation, and must of necessity obstruct bargaining." (*Labor Board* v. *Katz* (1962) 369 U.S. 736, 747 [8 L.Ed.2d 230, 238, 82 S.Ct. 1107]; *San Mateo Community College District, supra,* PERB Dec. No. 94 [3 PERC ¶ 10080] [applying *Katz, supra,* to EERA]; see also *Ruline Nursery Co.* v. *Agricultural Labor Relations Bd.* (1985) 169 Cal.App.3d 247, 264 [216 Cal.Rptr. 162] [applying *Katz, supra,* to Agr. Lab. Relations Act].)

■ The Court of Appeal held that parity clauses alter and restrict per se the duty to negotiate in good faith under section 3543.5, subdivision (c), since they limit a district's ability to bargain and to obstruct bargaining by creating unilateral change in a condition or term of employment as to the second bargaining unit. (*Labor Board* v. *Katz, supra,* 369 U.S. 736, 747; see also *San Mateo Community College District, supra,* PERB Dec. No. 94 [3 PERC ¶ 10080].) Absent the parity agreement, noted the Court of Appeal, the Teachers Association might have negotiated an offer greater than 8 percent.

The Court of Appeal's concern with the obstruction of bargaining is unfounded. Parity agreements no more restrict the District's bargaining position than do the confines of a limited budget which exist absent such agreement. Each employee bargaining unit necessarily has an impact on the negotiations of every other unit, regardless of the order in which contracts are negotiated or whether the District enters into parity agreements.

Referring to *Commonwealth of Pennsylvania* (1978) 9 PPER 9084, the Court of Appeal implied that a distinction exists between the "numerous economic facts of life during collective bargaining," which are beyond the control of the employer, and parity agreements, which "impermissibly bring another party to the bargaining table, thereby interfer[ing] with good faith negotiations between the employer and the union not protected by the parity agreement." The distinction is artificial. The effect of the two situations is equiparant: an employer brings to the bargaining table all of its budgetary concerns, one of which is salary increases to be paid to other bargaining units.

We find equally insubstantial the Court of Appeal's attempt to distinguish parity agreements from the normal bargaining process. The court concluded that a parity agreement provides a "direct" disincentive to bargaining, while "the economic facts of life" have only a "remote" effect. A parity agreement, which is a contractual budgetary restriction, is no more a disincentive to bargain than is a finite budget absent such agreement. It merely memorializes what is already a fiscal "fact of life."

A number of jurisdictions have ruled on the practice of parity agreements. Parity agreements are lawful in the private sector, under National Labor Relations Board jurisdiction (see *Teamsters, Local 126 (Inland Steel)* (1969) 176 NLRB 417) and have been upheld by courts or labor relations agencies in Michigan (*City of Detroit* v. *Killingsworth* (Mich. Cir. Ct. 1972) 80 LRRM 2752); New York (*City of Schenectady* v. *City Fire, etc.* (1982) 85 App.Div.2d 116 [448 N.Y.S.2d 806]); and Pennsylvania (*City of Scranton* (1984) 16 PPER ¶ 16016).

Parity agreements have been struck down by courts or labor relations agencies in Connecticut (*Loc. 1219, Intern., Fire Fighters* v. *Ct. L.R.B., supra,* 370 A.2d 952); Maine (*Lewiston Fire Ass'n.* v. *City of Lewiston* (Me. 1976) 354 A.2d 154); Massachusetts (*Medford School Committee* (1977) 3 MLC 1413); and New Jersey (*City of Plainfield* (1978) 4 NJPER ¶ 4130 [PERC No. 78-87]).

The Court of Appeal referred to *City of Plainfield, supra,* 4 NJPER ¶ 4130 [PERC No. 78-87], which held that parity agreements constitute a per se violation of the statutory duty to negotiate in good faith: "The parity clause has an inherently unavoidable coercive effect. When considering the proposals of one employee organization, the public employer must inevitably reconcile such a proposal with the ultimatum of providing similar economic proposals to any other organization which has the protection of a parity clause. . . . The mere existence of the clause is sufficient to chill the free exchange between the public employer and an employee organization by permitting a third employee organization not a party to the negotiations, to have impact on those negotiations." (*Ibid.*) As previously stated, such reasoning is unsound. The better reasoned cases, in our view, are those which defer to administrative agencies to decide on a case-by-case basis whether a given parity agreement violates statutory provisions of labor laws.

## CONCLUSION

To hold parity agreements per se illegal would place a burdensome limitation on public school employers to negotiate effectively in an already

cumbersome environment of multi-unit collective bargaining. It would obstruct employment relations, thus defeating the stated purpose of section 3512 "to foster peaceful employer-employee relations. . . ." It would also adversely affect the bargaining efficiency and strategy of school districts and public sector unions in California and would prolong bargaining, making settlements more difficult and labor unrest more frequent.

Although we conclude that parity agreements do not per se violate either section 3543.5, subdivision (c) or section 3545, subdivision (b)(3) and that PERB did not abuse its discretion in finding that the parity agreement here did not violate these statutes, we nevertheless recognize that under different circumstances an employer might violate the EERA by entering into a parity agreement.

The decision of the Court of Appeal is reversed.

Lucas, C. J., Mosk, J., Broussard, J., Arguelles, J., Eagleson, J., and Kaufman, J., concurred.