[No. D012247. Fourth Dist., Div. One. Mar. 13, 1991.]

SOUTH BAY UNION SCHOOL DISTRICT, Petitioner, v.
PUBLIC EMPLOYMENT RELATIONS BOARD, Respondent;
SOUTHWEST TEACHERS ASSOCIATION, CTA/NEA, Real Party
in Interest.

**[Opinion certified for partial publication.†]**

---

† Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts III, IV, and V.

COUNSEL

Brown & Conradi, Clifford D. Weiler and Donna M. Williamson for Petitioner.

Kronick, Moskovitz, Tiedemann & Girard, James Scot Yarnell, and James G. Seely as Amici Curiae on behalf of Petitioner.

John W. Spittler and Michael E. Gash for Respondent.

Reich, Adell & Crost and Marianne Reinhold for Real Party in Interest.

OPINION

**FROEHLICH, J.**—South Bay Union School District (District) seeks a writ of review of a Public Employment Relations Board (PERB) decision holding it had bargained in bad faith. (Gov. Code,[2] § 3543.5, subd. (c).) The principal issue raised by the petition is whether the employees' certificated exclusive bargaining representative, Southwest Teachers Association, CTA/NEA (Association), has a statutory right to file grievances in its own name rather than in the name of the specific complaining employee. District contends that PERB's decision affirming such right is in error.

BACKGROUND

Since 1977, District and Association have entered into a series of two-year contracts concerning working conditions. The present dispute arose during negotiations on the contract which was to commence in 1988. Apparently relying on a PERB administrative law judge (ALJ) decision,[3] the Association sought to include in the contract a provision permitting it to file grievances in its own name. After three months of negotiating this and

---

[2] All statutory references are to the Government Code unless otherwise specified.

[3] In *San Diego Unified School District* (Feb. 2, 1987) PERB Decision No. HO-U-314 [11 PERC ¶ 18050, at p. 231], the ALJ held that bargaining to impasse in order to limit an association's right to file grievances in its own name was an unfair labor practice. The order rendered the ALJ's earlier decision dated January 12, 1987 (11 PERC [¶] 18035) final and binding.

other issues, the District declared impasse. Ultimately, the Association yielded and entered a contract without the requested grievance provision.

Three PERB members took part in the decision underlying the petition. Relying on a PERB decision, *Anaheim Union High School District* (Oct. 28, 1981) PERB Decision No. 177 [5 PERC ¶ 12148, at p. 660] (hereinafter *Anaheim*), approved in *San Mateo City School Dist.* v. *Public Employment Relations Bd.* (1983) 33 Cal.3d 850 [191 Cal.Rptr. 800, 663 P.2d 523], the lead opinion found the District declared impasse on a nonmandatory subject of bargaining.[4] Citing *Lake Elsinore School District* (Dec. 30, 1986) PERB Decision No. 603 [11 PERC ¶ 18022, at p. 112] (hereinafter *Lake Elsinore*), accord *Labor Board* v. *Borg-Warner Corp.* (1958) 356 U.S. 342 [2 L.Ed.2d 823, 78 S.Ct. 718], and *Industrial Union of Marine & Shipbuilding Wkrs.* v. *N. L. R. B.* (3d Cir. 1963) 320 F.2d 615, PERB held this was per se bad faith bargaining. A concurring opinion agreed the grievance issue was not a mandatory subject of bargaining and therefore per se bad faith bargaining. Rather than relying on the *Anaheim* decision, the concurring opinion believed the grievance/standing issue was not a proper subject of bargaining at all since the Association has a statutory right to file grievances on behalf of its members in its own name. The third member dissented, contending that the standing to file a grievance is a mandatory bargaining subject, finding the Association has no statutory right to file grievances in its own name, and further finding that even if the District erred in declaring impasse on the subject, it was not per se bad faith bargaining.

## DISCUSSION

## I

This court is obligated to recognize the expertise of administrative boards like the PERB and to view them as quasi-judicial agencies. It must

---

[4] An "impasse," as defined in section 3540.1, subdivision (f), is presented in a negotiation when the parties have reached a point at which "their differences in positions are so substantial or prolonged that future meetings would be futile." Either party to the negotiation can declare an impasse which, if confirmed by PERB, will result under section 3548 et seq. in the appointment of a mediator and subsequent procedures for resolving the impasse. A party has the prerogative of declaring "impasse," however, only with respect to disputes "over matters within the scope of representation." (§ 3540.1, subd. (f).) An issue within the scope of representation is termed a "mandatory subject of bargaining." An issue not subject to mandatory bargaining is termed a "nonmandatory subject of bargaining." Since a party has no absolute right to negotiate concerning a "nonmandatory subject of bargaining," it has no prerogative of continuing the bargaining to the point of impasse and no proper election to declare impasse. A declaration of impasse with respect to an issue which is a "nonmandatory subject of bargaining," therefore, is an unfair labor practice. (See pt. II, *post*.)

give their opinions great deference. (*Banning Teachers Assn.* v. *Public Employment Relations Bd.* (1988) 44 Cal.3d 799, 804 [244 Cal.Rptr. 671, 750 P.2d 313]; *San Mateo City School Dist.* v. *Public Employment Relations Bd.*, *supra*, 33 Cal.3d 850 at p. 856.) As the Supreme Court said in *Banning*, *supra*:

"PERB has a specialized and focused task—'to protect both employees and the state employer from violations of the organizational and collective bargaining rights guaranteed by the [EERA].' (*Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168, 198 [citations].) As such, PERB is 'one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect.' (*Universal Camera Corp.* v. *Labor Bd.* (1951) 340 U.S. 474, 488 [citations].) '[T]he relationship of a reviewing court to an agency such as PERB, whose primary responsibility is to determine the scope of the statutory duty to bargain and resolve charges of unfair refusal to bargain, is generally one of deference' (*Oakland Unified School Dist.* v. *Public Employment Relations Bd.* (1981) 120 Ca.App.3d 1007, 1012 [citations]), and *PERB's interpretation will generally be followed unless it is clearly erroneous.* (*J.R. Norton Co.* v. *Agricultural Labor Relations Bd.* (1979) 26 Cal.3d 1, 29 [citations]; *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [citations], quoting *Bodison Mfg. Co.* v. *California E. Com.* (1941) 17 Cal.2d 321, 325 [citation].)" (*Banning Teachers Assn.* v. *Public Employment Relations Bd.*, *supra*, 44 Cal.3d at pp. 804-805, italics added.)

We must affirm factual determinations of boards if supported by substantial evidence (*Tex-Cal Land Management, Inc.* v. *Agricultural Labor Relations Bd.* (1978) 24 Cal.3d 335, 353 [156 Cal.Rptr. 1, 595 P.2d 579]) and give deference to their interpretations of the statutes falling within their expertise (*San Lorenzo Education Assn.* v. *Wilson* (1982) 32 Cal.3d 841, 850 [187 Cal.Rptr. 432, 654 P.2d 202]).

■ The District argues that the PERB decision here under review does not warrant deferential treatment by this reviewing court because no majority of two of the three-member panel exists for any theory of the case. Although two panel members agreed that the Association had a right to file grievances in its own name, they did not concur as to the legal basis for this conclusion. This argument might have some persuasion were we limited in our review to the opinions written in this case. However, although the factual issues of this case are of course limited to the record of the case, our construction of legal principles can be influenced by other, even later, pro-

nouncements of the administrative agency. ■ Subsequent to the decision in this case, PERB panels have issued two unanimous decisions holding: (1) an employee organization has a statutory right to file grievances in its own name, (2) whether an employee association can file grievances in its own name is not a mandatory subject of bargaining, and (3) an employer's insistence to impasse on a proposal restricting this right violates section 3543.5, subdivision (c). (See *Mt. Diablo Unified School District* (Oct. 4, 1990) PERB Dec. No. 844 [14 PERC ¶ 21192, at p. 693] (hereinafter *Mt. Diablo*); *Chula Vista City School District* (Aug. 16, 1990) PERB Dec. No. 834 [14 PERC ¶ 211621, at p. 580] (hereinafter *Chula Vista*).) The board member who dissented here joined in the unanimous opinions in *Mt. Diablo* and *Chula Vista*.

We are therefore quite well advised as to PERB's legal conclusion on this legal issue. We are obliged to approach its review in an attitude of deference, and to reject it only upon a finding that it is clearly erroneous. We proceed to that examination.

## II

The Education Employment Relations Act (EERA) requires a public school employer to "meet and negotiate" with its employees' exclusive representative over matters within the scope of representation.[5] Failure to meet and negotiate in good faith on a matter within scope is a violation of section 3543.5, subdivision (c).

Insistence to impasse on a nonmandatory subject is a per se violation of the EERA. In *Labor Board* v. *Borg-Warner Corp.*, *supra*, 356 U.S. at page

---

[5] "The EERA establishes a system of collective bargaining for employees of public school districts educating students in grades kindergarten through 14. It was enacted in 1975 (Stats. 1975, ch. 961, § 2, p. 2247, operative July 1, 1976; codified as §§ 3540-3549.3). The Act requires the school district employer to meet and negotiate in good faith with the duly selected exclusive representative of its employees as to subjects within the statutorily defined scope of representation. (§§ 3543.3, 3543.5.) The parties may enter into a binding agreement (§ 3540.1, subd. (h)), and may agree that disputes involving interpretation, application or violation of the agreement be resolved through binding arbitration (§§ 3548.5, 3548.6, 3548.7). The employer must negotiate in good faith and must submit to mediation and advisory fact-finding where an impasse in negotiations is determined to have been reached. (§§ 3548-3548.3.) [¶] PERB is specifically empowered to 'determine in disputed cases whether a particular item is within or without the scope of representation' and to investigate unfair practice charges and 'take such action and make such determinations in respect of such charges . . . as the board deems necessary to effectuate the policies of [the Act].' (§ 3541.3, subds. (b), (i).) The initial determination of whether unfair practice charges are justified is within the exclusive jurisdiction of PERB. (§ 3541.5.)" (*San Mateo City School Dist.* v. *Public Employment Relations Bd.*, *supra*, 33 Cal.3d at pp. 855-856.)

349 [2 L.Ed.2d at pages 828-829], the Supreme Court noted the distinction between mandatory and nonmandatory subjects of bargaining and held it is bad faith bargaining to refuse to enter an agreement solely because the parties have reached impasse on a nonmandatory bargaining subject.

Relying on *Labor Board* v. *Borg-Warner Corp. supra*, 356 U.S. 342, the federal court of appeal held in *Industrial Union of Marine & Shipbuilders Wkrs.* v. *N. L. R. B.*, *supra*, 320 F.2d at page 618, "[i]f the proposal [was] not a mandatory bargaining subject, insistence upon it was a per se violation of the duty to bargain." In *Lake Elsinore*, PERB applied the principle to the EERA.

Section 3543.2, subdivision (a) sets forth those matters which are specifically within the "scope of representation," and generally defines them as "matters relating to wages, hours of employment, and other terms and conditions of employment." PERB decisions, notably *Anaheim*, expand upon the specifically enumerated matters which are deemed proper subjects for negotiation by outlining a three-part formula designed to identify additional subjects which are appropriately the subject of bargaining and negotiation. Contentions and issues not falling within either the enumerated matters set forth in section 3543.2, subdivision (a), or the expanded criteria of the *Anaheim* test are not appropriate subjects for bargaining and persistent dispute and hence are "nonmandatory subjects of bargaining."

District contends that the question whether Association as an entity is entitled to file grievances is inherently and inextricably intertwined with "procedures for processing grievances," defined in section 3543.2, subdivision (a) as a matter within the scope of representation, and hence a mandatory subject of bargaining. The core reasoning of current PERB authority (illustrated by the concurring and dissenting opinion in this case and the subsequent opinions in *Chula Vista* and *Mt. Diablo*) passes over the linguistic difficulties of section 3543.2, subdivision (a), however, relying instead on specific statutory authority which it finds, independent of section 3543.2, subdivision (a), to establish a nonnegotiable direct right of grievance filing in the Association. This it finds in section 3543.1, subdivision (a) in the following prescription:

"Employee organizations shall have the right to represent their members in their employment relations with public school employers, . . ." The clearest analysis of the import of this provision is contained in *Chula Vista* (which is a direct quote from the administrative law judge's opinion):

"The system of labor relations created by the EERA envisioned employees acting collectively through a chosen exclusive representative to bargain with their employer about matters within the scope of representation. The grievance procedure is a contractual tool for enforcing the results of a negotiated agreement. For contract violations to be grievable and arbitrable only by the initiation of an individual employee runs counter to the EERA's statutory system of collective action. In a system of collective bargaining, the ability to challenge contractual . . . violations must lie with the party that negotiated the contract, i.e., the exclusive representative." (*Chula Vista, supra*, 14 PERC at p. 586.)

It is undisputed that under the EERA: (1) the school district must bargain in good faith with the association as the exclusive representative of its employees regarding terms and conditions of employment (§ 3543.5, subd. (c)); and (2) if these parties reach agreement, a contract embracing the terms of the agreement is entered into between the school district and the association. In light of these facts, it is logical and consistent for the party which has entered into the contract, the association, to be entitled to enforce it. This power on behalf of the Association to enforce its contract by direct action does not undermine the interests of employees who may not wish union representation because section 3543 provides explicit authority for them to file grievances on their own behalf. We do not seriously consider the argument of District, unsupported by any factual evidence, that the power of unions to file grievances directly will prejudice those employees who are either not affiliated with or are out of favor with the union.

The lead opinion here found the right to file a grievance a nonmandatory subject of bargaining based upon the application of *Anaheim*, rather than because it was a statutory right. ■ Our affirmance of the opinion's conclusion is proper, even though we now do not rely upon its reasoning, because a correct result will be affirmed even if based upon erroneous legal principles. (See *People* v. *Braeseke* (1979) 25 Cal.3d 691, 700 [159 Cal.Rptr. 684, 602 P.2d 384].)

III-V*

* See footnote, *ante*, page 502.

## DISPOSITION

The petition is denied.

Benke, Acting P. J., concurred.

**HUFFMAN, J.,** Concurring and Dissenting.—I concur in both the reasoning and the result of the opinion except for part V.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .*

---

*See footnote, *ante*, page 502.