[No. B233494. Second Dist., Div. Seven. Mar. 13, 2012.]

MELANIE STALLINGS WILLIAMS et al., Plaintiffs and Appellants, v. PUBLIC EMPLOYMENT RELATIONS BOARD, Defendant and Respondent;
CALIFORNIA FACULTY ASSOCIATION, Real Party in Interest and Respondent.

**COUNSEL**

Melanie Stallings Williams, in pro. per., for Plaintiffs and Appellants.

M. Suzanne Murphy, Wendi L. Ross and Laura Z. Davis for Defendant and Respondent.

Rothner, Segall & Greenstone, Jonathan Cohen and Eli Naduris-Weissman for Real Party in Interest and Respondent.

## OPINION

**WOODS, J.**—Melanie Stallings Williams and Demosthenes Andrew Halcoussis are professors at California State University, Northridge (CSUN), and are members of the faculty bargaining unit. The California Faculty Association (CFA) is the exclusive representative of the faculty bargaining unit pursuant to the Higher Education Employer-Employee Relations Act (HEERA).[1] (Gov. Code,[2] § 3560 et seq.) PERB is the agency charged with interpreting and administering HEERA. (§ 3563.)

Appellants filed claims with PERB alleging that their federal and state constitutional rights were violated when CFA denied them, and other non-member represented employees, the right to vote on a proposed furlough program. Appellants contend the superior court erred in denying their petition for a writ of mandamus because their constitutional rights were violated by CFA's action and by PERB's refusal to issue an unfair labor practice (ULP) complaint for that action. In addition, appellants contend that PERB improperly interpreted HEERA when it refused to issue a ULP complaint based on CFA's action. We affirm.

## FACTUAL AND PROCEDURAL SYNOPSIS

### I. *Factual Background*

CFA and CSU are parties to a collective bargaining agreement (CBA) which governs the terms and conditions of employment for all employees included in the faculty bargaining unit. As was their right, appellants elected not to join CFA as union members; instead, they paid an agency fee to CFA as a condition of employment. (See *Teachers v. Hudson* (1986) 475 U.S. 292, 301–302 [89 L.Ed.2d 232, 106 S.Ct. 1066].) The agency fee amount is equal to the full amount of dues paid by union members, reduced by an amount representing the percentage of fees CFA spends on political activities. (See *Abood v. Detroit Board of Education* (1977) 431 U.S. 209, 234–235 [52 L.Ed.2d 261, 97 S.Ct. 1782].)

In June 2009, facing budget cuts, CSU approached CFA to discuss implementing furloughs (reduced hours for reduced pay) for members of the faculty bargaining unit in order to avoid layoffs. Following discussions with CSU in person and on the phone, CFA sought feedback from all bargaining

---

[1] HEERA is a comprehensive statutory scheme governing labor relations in the California State University (CSU) and University of California (UC) systems. PERB (Public Employment Relations Board) administers six other statutory schemes governing labor relations in the public sector.

[2] Unless otherwise noted, all statutory references are to the Government Code.

unit members regarding a tentative proposal that faculty employees take two unpaid furlough days per month. On its main Web site, CFA solicited input regarding the proposed furlough plan from all bargaining unit members. CFA explained that employees must be union members to vote on the proposal and advised employees that they could sign up to become union members. On its Web page specific to CSUN employees, CFA invited all faculty to attend a two-hour meeting on June 25, to discuss furloughs and layoffs. CFA also notified faculty members that issue updates could be followed, and they could post messages about the proposed program, on twitter.com.

From July 13 to July 22, CFA conducted an internal vote on whether to agree to furloughs. Only union members were permitted to vote; nonmembers such as appellants were not. On July 16, Williams wrote to CFA asking to be allowed to vote despite not being a union member, referring to the union's duty of fair representation and stating that "[p]ermitting only union members to vote on matters relating to topics under the sole representation of the union constitutes unlawful discrimination." On July 17, CFA responded, denying her request and citing PERB precedent, but inviting her to provide her views on the furlough issue and stating CFA would carefully consider any views she provided. Following the membership vote, CFA and CSU exchanged further proposals on the matter and reached an agreement on July 28. The furlough plan agreed on was slightly more favorable to employees than the furlough plan voted upon and approved by union members.

## II.  *Procedural Background*

### A.  *PERB*

In July 2009, appellants filed with PERB substantively identical ULP charges against CFA. The charges alleged CFA violated its duty of fair representation pursuant to section 3578 by not allowing appellants to vote on the furlough proposal based on the fact they were not union members and also violated members' rights to freely associate under the federal Constitution. On December 2, 2009, following her investigation, a PERB agent sent warning letters to appellants advising them that their allegations did not state a prima facie case. The agent explained that PERB had previously addressed the issue and held that unions might exclude nonmembers from voting so long as the union provided nonmembers an opportunity to communicate their views and that PERB did not have jurisdiction to enforce the United States Constitution. The agent gave appellants an opportunity to amend or withdraw the charges. (See Cal. Code Regs.,[3] tit. 8, §§ 32621, 32625.) On December 4, appellants advised the agent that they would not amend the charges. On

---

[3] The California Code of Regulations was referred to by the parties as CCR.

December 14, the agent dismissed the charges. (See Cal. Code Regs., tit. 8, §§ 32620, subd. (b)(5), 32630.)

On December 30, appellants appealed the dismissal of their charges to PERB itself. (See Cal. Code Regs., tit. 8, § 32635.) On June 14, 2010, PERB issued board decisions Nos. 2116-H and 2117-H, which adopted the warning and dismissal letters as the final decisions of PERB and dismissed the charges without leave to amend. (See Cal. Code Regs., tit. 8, § 32320.)

B. *Superior Court*

On August 3, 2010, pursuant to Code of Civil Procedure section 1094.5, appellants filed a petition for writ of administrative mandate with the court. The court reviewed the petition as a traditional mandamus petition under Code of Civil Procedure section 1085. On April 1, the court denied the petition and adopted its 12-page tentative decision. The court entered judgment against appellants, and appellants filed a timely notice of appeal.

## DISCUSSION

I. *Introduction*

A. *HEERA*

■ A union has a duty to represent all employees in a bargaining unit fairly and impartially. (§ 3578.) It is a ULP for a union to fail to represent fairly and impartially all the employees in the unit for which it is the exclusive representative. (§ 3571.1, subd. (e).) A breach of that duty occurs if the union's conduct is arbitrary, discriminatory or in bad faith. (§ 3578.)

An employee who complains a union has breached its duty of fair representation may file a ULP charge with PERB. PERB processes the charge and has the exclusive authority to make the initial determination of whether a ULP complaint is justified. (§ 3563.2.) The charge is initially assigned to a PERB agent. (Cal. Code Regs., tit. 8, § 32620, subd. (a).) The entity against whom the charge is filed is given an opportunity to submit a position statement. (Cal. Code Regs., tit. 8, § 32620, subd. (c).) If the agent determines that the charge fails to state a prima facie case,[4] the charging party is given an opportunity to amend or withdraw the charge. (Cal. Code Regs., tit. 8, §§ 32620, subd. (d), 32621, 32625.) If an amended charge does not cure

---

[4] PERB defines a "prima facie case" as one where the facts alleged in a ULP charge state a legal cause of action and the charging party is capable of providing admissible evidence in support of the allegations. (*Eastside Union School Dist.* (1984) PERB Dec. No. 466, p. 7.)

the deficiencies identified in the warning letter or the charge is not amended, the charge is dismissed. (Cal. Code Regs., tit. 8, §§ 32620, subd. (b)(5), 32630.) If the agent refuses to issue a complaint and dismisses the charge, the agent's decision may be challenged to PERB's five-member board. (Cal. Code Regs., tit. 8, § 32635, subd. (a).)

### B. Standard of Review

Section 3564, subdivision (b) provides: "Any charging party, respondent, or intervenor aggrieved by a final decision or order of the board in an unfair practice case, *except a decision of the board not to issue a complaint* in such a case, may petition for a writ of extraordinary relief from such decision or order." (Italics added.)

In 2011, the California Supreme Court carved out three narrow exceptions to the general rule that a PERB decision not to issue a complaint was not subject to judicial review. "[W]hen PERB refuses to issue a complaint under the MMBA,[5] a superior court may exercise mandamus jurisdiction to determine whether PERB's decision violates a constitutional right, exceeds a specific grant of authority, or is based on an erroneous statutory construction. We stress, however, that it remains true that a refusal by PERB to issue a complaint under the MMBA is not subject to judicial review for ordinary error, including insufficiency of the evidence to support the agency's factual findings and misapplication of the law to the facts, or for abuse of discretion. Also, to avoid undue interference with the discretion that the Legislature has intended PERB to exercise, courts must narrowly construe and cautiously apply the exceptions we here recognize." (*International Assn. of Fire Fighters, Local 188, AFL-CIO v. Public Employment Relations Bd.* (2011) 51 Cal.4th 259, 271 [120 Cal.Rptr.3d 117, 245 P.3d 845] (*Fire Fighters*).)

Appellants invoke the first and third exceptions and ask this court to exercise its independent judgment to resolve the legal questions of whether (1) CFA and PERB violated appellants' federal and state constitutional rights; (2) CFA and PERB incorrectly construed their statutory duties; and (3) the court erred in reviewing the action as a petition for writ of mandate rather than administrative mandate, thus applying an incorrect standard of review, i.e., arbitrary and capricious, rather than de novo.

---

[5] The Meyers-Milias-Brown Act (§ 3500 et seq.) is one of the other acts administered by PERB.

## II.  *Exceptions*

### A.  *Constitutional Rights*

■ Review under this exception is available only where the complaining party raises a colorable claim that PERB's refusal to issue a complaint violated a constitutional right. (*Fire Fighters, supra,* 51 Cal.4th at p. 268.) Appellants assert that CFA's withholding voting rights and PERB's declining to issue a ULP violated state and federal constitutional rights to free speech, due process, equal protection and freedom of assembly as well as California Constitution, article I, section 1's guarantee of the right to live with independence and privacy.

In its decision, PERB refused to consider appellants' federal constitutional claim, stating it was not authorized to enforce the Constitution. The superior court found this exception did not apply as appellants had focused on the wrong party because the exception had to be based on PERB's, not CFA's, violation of a constitutional right. Without citing any supporting authority, appellants claim PERB's refusal was itself unconstitutional as a violation of due process and equal protection.

Implicit in *Fire Fighters* is that the exception for judicial review of a violation of a constitutional right is based on the administrative agency's action. "The California Constitution gives rise to a presumption in favor of at least limited judicial review of state administrative agency actions." (*Fire Fighters, supra,* 51 Cal.4th at p. 270.)

Appellants posit this court should consider CFA's action as they cannot sue CFA directly, only PERB can sue CFA. PERB argues appellants can sue CFA in another forum on a different legal theory. (See, e.g., *San Lorenzo Education Assn. v. Wilson* (1982) 32 Cal.3d 841, 853 [187 Cal.Rptr. 432, 654 P.2d 202] [union could file suit against noncomplying employee in small claims court; *California Attorneys, etc. v. Schwarzenegger* (2009) 174 Cal.App.4th 424, 426–427, 429 [94 Cal.Rptr.3d 275] [the union representing lawyers in the Attorney General's office asserted that the failure of the collective bargaining process had caused a compensation crisis and argued the relevant collective bargaining act had been unconstitutionally applied to their bargaining unit].) Appellants respond that they cannot proceed against CFA directly once the administrative process concludes because PERB has exclusive jurisdiction to determine if a ULP was committed, but they do not explain how that prevents them from suing CFA in court on the basis the behavior allegedly constituting a ULP also had some other legal defect.

■ Appellants assert their constitutional rights are being violated as they must join the union in order to vote. However, appellants cite no authority that there is a constitutional right to participate in a union vote under either the state or federal Constitution, and we decline to hold such a right exists. (Cf. *Lehnert v. Ferris Faculty Assn.* (1991) 500 U.S. 507, 517 [114 L.Ed.2d 572, 111 S.Ct. 1950] ["[A]n employee's free speech rights are not unconstitutionally burdened because the employee opposes positions taken by a union in its capacity as collective-bargaining representative."].) Thus, there was no denial of due process or equal protection, and neither PERB nor CFA violated appellants' constitutional rights.

B. *Statutory Construction*

■ This exception allows courts to correct a clearly erroneous construction "when that erroneous construction potentially affects a large class of cases and threatens to frustrate an important policy that [HEERA] was enacted to further." (*Fire Fighters, supra,* 51 Cal.4th at pp. 269–270.) Generally, PERB decisions are entitled to deference and its interpretation of pertinent statutes will be followed unless clearly erroneous. (See *Banning Teachers Assn. v. Public Employment Relations Bd.* (1988) 44 Cal.3d 799, 804 [244 Cal.Rptr. 671, 750 P.2d 313].)

Appellants contend PERB's refusal to issue a complaint was based on an erroneous interpretation of a statute as HEERA prohibits a union from engaging in arbitrary conduct and PERB's conclusion that CFA may treat nonmembers in a discriminatory fashion was inconsistent with that statute as PERB is required to determined if a ULP was committed and can dismiss the charge only if it was insufficient to establish a prima facie case. To the extent appellants seem to suggest that PERB did not perform its statutory function with regard to their charges, they are incorrect; what appellants disagree with is PERB's conclusion they had not established a prima facie case.

■ Almost 30 years ago, in discussing a union's duty of fair representation, PERB reasoned: "As to questions which do not involve the employer or which are strictly internal union matters, only those activities that have a substantial impact on the relationship of unit members to their employer are subject to the duty of fair representation." (*El Centro Elementary Teachers Assn. (Willis and Willis)* (1982) PERB Dec. No. 232, p. 14.) In concluding that a union could exclude nonmember employees from voting on proposals for negotiations and contract ratification, PERB reasoned that although the duty of fair representation implied some consideration of the views of various groups of employees and some access for communicating those views, "the denial of formal voting structure to nonmembers does not have a substantial impact on the relationship of unit members to their employer." (*Id.* at pp. 15–17.)

In 2006, citing to *El Centro*, PERB concluded that "a union may exclude non-members from voting as long as the union provides non-members with an opportunity to communicate their views." (*Kern High Faculty Assn., CTA/NEA (Maaskant)* (2006) PERB Dec. No. 1834, pp. 2–3 of dismissal letter.) In that case, although voting was restricted to union members, the union had taken a survey of all bargaining unit members prior to submitting an initial proposal and held two ratification meetings that included question and answer sessions open to all members. (*Id.* at p. 3 of warning letter.) Other PERB decisions have reached similar conclusions that the right to vote can be restricted to union members as long as the union gives some consideration to the views of nonmembers. (See, e.g., *Service Employees Internat. Union, Local 99 (Kimmett)* (1979) PERB Dec. No. 106, pp. 8, 11; *Fontana Teachers Assn., CTA/NEA (Alexander)* (1984) PERB Dec. No. 416.)

Thus, it is apparent from prior PERB decisions, which rely on federal precedent, that there was no violation of the duty of fair representation. The issue becomes whether PERB's interpretation was clearly erroneous.

█ Appellants argue that it is a mistake to follow federal law as state law is not parallel to the National Labor Relations Act (NLRA; 29 U.S.C. § 151 et seq.). Under federal law, a ULP is one that "restrain[s] or coerce[s]" an employee. (29 U.S.C. § 158(b)(1)(A).) Appellants claim California is more protective of employee rights as California requires a union to treat all employees fairly and impartially and failing to do so is a violation of the duty of fair representation and a ULP. (§§ 3571.1, subd. (e), 3578.) However, the NLRA has been similarly interpreted. (See *Internat. Brotherhood of Teamsters, Chauffeurs v. N. L. R. B.* (D.C. Cir. 1978) 190 U.S. App.D.C. 279 [587 F.2d 1176, 1181].)

Appellants state federal law is inconsistent as to whether a union must provide nonmembers an opportunity to vote on matters relating to the terms and conditions of employment, noting *Internat. Brotherhood of Boilermakers* (1990) 300 NLRB 28 stated it was discrimination to require union membership to vote whereas *Afro-American Police League v. Fraternal Order of Police, Chicago Lodge No. 7* (N.D.Ill. 1982) 553 F.Supp. 664, 668 concluded there was no duty "which requires that nonmembers of the union be allowed to vote on the ratification of the union contract."

█ Appellants argue CFA gave up its representative role when it left the issue of furloughs to be decided by vote, thus abandoning its negotiating function as to whether or not to agree to furloughs such that the vote was not an internal union matter but rather related to the terms and conditions of employment. Though furloughs are a term and condition of employment, some federal authority permits unions to limit vote participation to union members as long as the union considers the views of nonmembers.

In *Internat. Brotherhood of Teamsters, Chauffeurs v. N. L. R. B., supra,* 587 F.2d at pages 1183–1184, in a case of joint representation, AFL-CIO unions had refused to admit members of the International Brotherhood of Teamsters (Teamsters) to vote on whether to accept a contract, the court concluded the AFL-CIO unions had discriminated against the Teamsters, committed a ULP, and violated their duty of fair representation; the court noted the right to ratify a contract was not an internal union matter with no effect on the terms and conditions of employment.

In *Internat. Brotherhood of Boilermakers, supra,* 300 NLRB No. 28, at pages 31–32, the NLRB affirmed the finding of an administrative law judge that by denying nonunion unit employees the right to vote in a referendum conducted on individual preferences concerning specific terms and conditions of employment, while allowing union employees to vote and ignoring a poll of all employees on the issue at hand, the union committed a ULP under the NLRA.

*Boilermakers* relied on *Branch 6000, National Assn. of Letter, etc. v. N. L. R. B.* (D.C. Cir. 1979) 194 U.S. App.D.C. 1 [595 F.2d 808], in which the court agreed with the National Labor Relations Board (NLRB) that in a situation where the preferences of only union members determined a term and condition of employment without any consideration being afforded to the interests of nonunion members, the union had violated its duty of fair representation owed to all employees in the unit. (*Id.* at p. 809.) The court found that under those circumstances where the union had completely abdicated its representative function and failed to give any consideration to the views or interests on nonunion members, there was a violation of the duty of fair representation. (*Id.* at p. 812.)

In contrast to the situation in *Branch 6000,* CFA had procedures in place to gather the views of nonmembers. On its main Web site, CFA solicited input regarding the proposed furlough plan from all bargaining unit members. On its Web page specific to CSUN, CFA invited all faculty to attend a meeting to discuss furloughs and layoffs, and CFA notified faculty members that they could post messages about the proposed program on twitter.com. In response to Williams's request to be allowed to vote, CFA stated it would consider any views she provided.

The superior court noted that although there was conflicting evidence, PERB had not concluded that CFA had abandoned its representative function, but rather concluded that " 'CFA was in the midst of conducting an internal vote to determine whether CSU faculty members supported the Union

renegotiating the CBA in order to implement a two-day-a-month furlough program.' " The court stated under *Fire Fighters*, it could not review PERB's decision for insufficiency of the evidence or abuse of discretion, but if it could do so, there was substantial evidence CFA had not abdicated the furlough issue to its membership.

■ Accordingly, under the circumstances of this case, which included soliciting the views of nonmembers and continuing negotiations after the vote, the conclusion that CFA did not have to allow nonmembers to vote on the proposed furlough program was not a clearly erroneous construction of the duty of fair representation under HEERA.

## III. *Mandamus Review*

Appellants contend the court erred in trying the case as traditional mandamus rather than as administrative mandamus. Citing Code of Civil Procedure section 1085, the Supreme Court expressly stated the exceptions to the rule against judicial review of PERB decisions not to issue a ULP complaint were reviewable under traditional mandamus. (*Fire Fighters, supra*, 51 Cal.4th at p. 270.)

Administrative mandamus is available when a hearing, taking evidence and discretion to determine facts are all required by law. (*Harris v. Civil Service Com.* (1998) 65 Cal.App.4th 1356, 1363 [77 Cal.Rptr.2d 366].) Appellants argue administrative mandamus under Code of Civil Procedure section 1094.5 is appropriate because section 3563.2 mandates a hearing and it does not matter that no oral hearing is held as PERB procedures provide for a documentary hearing which satisfies Code of Civil Procedure section 1094.5 as long as the agency accepts and considers the parties' evidence before making its decision. Section 3563.2 merely authorizes PERB to establish procedures, including ones for holding a hearing.

A PERB agent handling a ULP charge does not hold a hearing and accepts as true the allegations in the charge; the agent does not make factual findings. (See *Trustees of The California State University (Sonoma)* (2005) PERB Dec. No. 1755, p. 6 ["the charging party's allegations must be accepted as true"]; *UPTE, CWA Local 9119 (Abernathy)* (2005) PERB Dec. No. 1784-H, p. 7 [conflicting facts are resolved after a complaint is issued; it is not a function of the agent to judge the merits of the dispute].) Thus, the court properly reviewed appellants' writ petition as one for traditional mandamus rather than one for administrative mandamus.

## DISPOSITION

The judgment is affirmed. Respondents to recover costs on appeal.

Perluss, P. J., and Zelon, J., concurred.