Filed 3/30/16

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO HOUSING COMMISSION, | D066237 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-00087278-CU-WM-CTL) |
| PUBLIC EMPLOYMENT RELATIONS BOARD, | |
| Defendant and Appellant; | |
| SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 221, | |
| Real Party in Interest and Respondent | |

APPEALS from a judgment of the Superior Court of San Diego County, Ronald L. Styn and Kevin A. Enright, Judges. Judgment reversed; cross-appeal dismissed as moot.

J. Felix De La Torre, Wendi L. Ross, Ronald R. Pearson and Jonathan I. Levy for Defendant and Appellant Public Employment Relations Board.

Christensen & Spath, Charles B. Christensen, Walter F. Spath III and Joel B. Mason for Plaintiff and Appellant San Diego Housing Commission.

Renne Sloan Holtzman Sakai, Timothy G. Yeung and Erich W. Shiners for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Plaintiff and Appellant San Diego Housing Commission.

INTRODUCTION

This appeal requires us to decide whether the provisions in the Meyers-Milias-Brown Act (Act) (Gov. Code, § 3500 et seq.)[1] for impasse resolution through advisory factfinding (factfinding provisions) apply to impasses arising during the negotiation of any bargainable matter or only to impasses arising during the negotiation of a comprehensive memorandum of understanding (MOU).[2] We conclude the factfinding provisions apply to impasses arising during the negotiation of any bargainable matter. As the trial court determined otherwise, we reverse the court's judgment and remand the matter for further proceedings consistent with our decision.

BACKGROUND

The San Diego Housing Commission (Commission) is a local public agency subject to the Act. (§ 3501, subd. (c).) Service Employees International Union, Local

[1]     Further statutory references are to the Government Code unless otherwise specified.

[2]     We ordered this appeal considered with the appeal in *County of Riverside v. Public Employment Relations Board* (Mar. 30, 2016, D069065) ___ Cal.App.4th ___.

221 (Union) is an employee organization and the exclusive representative of certain Commission employees. The Public Employment Relations Board (Board) is a quasi-judicial administrative agency modeled after the National Labor Relations Board and administers the Act. (*County of Los Angeles v. Los Angeles County Employee Relations Com.* (2013) 56 Cal.4th 905, 916 (*County of Los Angeles*); §§ 3501, subd. (f), 3509, subd. (a), 3541, subd. (g).)

After the Commission and the Union reached an impasse in their negotiations over the effects of the Commission's decision to lay off two employees represented by the Union, the Union made a written request to the Board for the parties' dispute to be submitted to a factfinding panel under section 3505.4, subdivision (a).[3] When the Board

---

[3]     Section 3505.4 was originally enacted in 2000. (Stats. 2000, ch. 316, § 1.) In 2011, the Legislature adopted Assembly Bill No. 646 (AB 646), which repealed the original version of section 3505.4 and replaced it with new sections 3505.4, 3505.5, and 3505.7. (Stats. 2011, ch. 680, §§ 1-4.) Subdivision (a) of the new section 3505.4 authorized an employee organization to request the parties' differences be submitted to a factfinding panel for advisory findings and recommendations after the parties reached an impasse they were unable to resolve through mutually agreed upon mediation and before the public agency imposed its last, best, and final offer.

In 2012, after this action was filed, the Legislature amended subdivision (a) of section 3505.4 to authorize an employee organization to request the parties' differences be submitted to a factfinding panel for advisory findings and recommendations even if the parties had not first attempted to resolve the impasse through mutually agreed upon mediation. The Legislature also added subdivision (e) to section 3505.4, which precludes an employee organization from waiving its right to request a factfinding panel. (Stats. 2012, ch. 314, § 1.) Because the 2012 amendments do not affect the resolution of this appeal, our references to section 3505.4 are to the amended, or current, version of the code section.

Current section 3505.4, subdivision (a), provides in part: "[A]n employee organization may request that the parties' differences be submitted to a factfinding panel not later than 30 days following the date that either party provided the other with a written notice of a declaration of impasse. Within five days after receipt of the written

granted the request over the Commission's objection, the Commission filed this action seeking a declaratory judgment and a writ of mandate prohibiting the Board from ordering the use of factfinding procedures in this case, determining the use of factfinding procedures is not permitted under the circumstances of this case, and restraining the parties from using factfinding procedures on matters unrelated to the negotiation of an MOU.[4]

The Commission subsequently filed a motion for summary judgment, arguing the Commission was entitled to a declaratory judgment and writ of mandate as a matter of law because the Act's factfinding provisions applied only to an impasse arising during the negotiation of a comprehensive MOU, not to an impasse arising during the negotiation of a discrete, bargainable issue. The court agreed with the Commission's interpretation of the Act and granted the Commission's motion. The court then issued a judgment declaring the Act's factfinding provisions only apply to an impasse arising from the negotiation of a new or successor MOU and do not apply to an impasse arising from any

---

request, each party shall select a person to serve as its member of the factfinding panel. The [Board] shall, within five days after the selection of panel members by the parties, select a chairperson of the factfinding panel."

[4] The parties informed us at oral argument the two affected employees no longer work for the Commission. None of the parties contends this case is moot. "A case is moot when the reviewing court cannot provide the parties with practical, effectual relief. [Citation.] In such cases, the appeal generally should be dismissed. [Citation.] But even if a case is technically moot, the court has inherent power to decide it where the issues presented are important and of continuing interest." (*City of San Jose v. International Assn. of Firefighters, Local 230* (2009) 178 Cal.App.4th 408, 417-418.) Even if this action "is technically moot, given the important issues presented, 'it is appropriate for us to retain and decide the matter.' " (*Id*. at p. 418.)

4

other negotiations. The court also issued a writ of mandate commanding the Board to dismiss the factfinding proceedings requested by the Union, to rescind any requirement for the Commission to participate in factfinding proceedings for impasses not involving the negotiation of a new or successor MOU, and to reject any requests for the Commission to participate in factfinding proceedings for impasses not involving the negotiation of a new or successor MOU. The court later denied the Commission's motion for attorney fees under Code of Civil Procedure section 1021.5.

DISCUSSION

I

The resolution of this appeal turns on the proper interpretation of the Act's factfinding provisions. The interpretation of a statute presents a question of law, which we review independently. (*B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 189; *Santa Clara County Correctional Peace Officers' Assn., Inc. v. County of Santa Clara* (2014) 224 Cal.App.4th 1016, 1026 (*Santa Clara*).)

" 'Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them their usual and ordinary meaning. [Citation.] The statute's plain meaning controls the court's interpretation unless its words are ambiguous.' [Citations.] If the words in the statute do not, by themselves, provide a reliable indicator of legislative intent, '[s]tatutory ambiguities often may be resolved by examining the context in which the language appears and adopting the construction which best serves to harmonize the statute internally and with related statutes. [Citation.]'

5

[Citation.] ' "Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute …; and if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed [citation]." [Citations.]' [Citation.] If the statute is ambiguous, we may consider a variety of extrinsic aids, including legislative history, the statute's purpose, and public policy." (*People v. Arias* (2008) 45 Cal.4th 169, 177.)

## II

## A

The Act imposes a duty on a public agency to "meet and confer in good faith" with a recognized union, "regarding wages, hours, and other terms and conditions of employment … prior to arriving at a determination of policy or course of action." (§ 3505.) The duty to bargain applies to a decision "directly defining the employment relationship, such as wages, workplace rules, and the order of succession of layoffs and recalls." (*International Assn. of Fire Fighters, Local 188, AFL-CIO v. Public Employment Relations Bd.* (2011) 51 Cal.4th 259, 272 (*Fire Fighters 188*).) The duty to bargain also applies to a fundamental management or policy decision if the decision directly affects employment and " 'the employer's need for unencumbered decisionmaking in managing its operations is outweighed by the benefit to employer-employee relations of bargaining about' " the decision. (*Id.* at pp. 273, 274; *Claremont Police Officers Assn. v. City of Claremont* (2006) 39 Cal.4th 623, 638.) Thus, the duty to bargain extends to matters beyond what might typically be incorporated into a

6

comprehensive MOU, including, as here, the implementation and effects of a decision to lay off employees. (*Fire Fighters 188*, *supra*, at p. 277.)

B

Before the passage of AB 646, if a public agency and a union reached an impasse in their negotiations, the Act permitted the parties to mutually agree to engage in mediation (§ 3505.2), but did not require the parties to engage in factfinding or any other impasse procedure. (*Bagley v. City of Manhattan Beach* (1976) 18 Cal.3d 22, 25-26; *Fire Fighters Union v. City of Vallejo* (1974) 12 Cal.3d 608, 614, fn. 4.) If there was no impasse procedure applicable by local law or by the parties' agreement, the public agency could unilaterally impose its last, best and final offer. (*Santa Clara*, *supra*, 224 Cal.App.4th at p. 1034.)

C

The absence of mandatory impasse procedures in the Act prompted the introduction of AB 646. (*Santa Clara*, *supra*, 224 Cal.App.4th at p. 1035, fn. 5.) With AB 646's passage, if a public agency and a union reach an impasse in their negotiations, the union may now require the public agency to participate in one type of impasse procedure—submission of the parties' differences to a factfinding panel for advisory findings and recommendations—before the public agency may unilaterally impose its last, best, and final offer. (§§ 3505.4, subd. (a), 3505.5, subd. (a), 3505.7.)[5]

---

[5]     See fn. 3, *ante*, for the text of section 3505.4, subdivision (a).

        Section 3505.5, subdivision (a), provides: "If the dispute is not settled within 30 days after the appointment of the factfinding panel, or, upon agreement by both parties

7

Upon submission of the parties' differences to a factfinding panel, the panel must meet with the parties "and may make inquiries and investigations, hold hearings, and take any other steps it deems appropriate." (§ 3505.4, subd. (c).) In arriving at its findings and recommendations, the panel must consider, weigh, and be guided by several criteria, including "[t]he interests and welfare of the public and the financial ability of the agency"; a "[c]omparison of the wages, hours, and conditions of employment of the employees involved in the factfinding proceeding with the wages, hours, and conditions of employment of other employees performing similar services in comparable public agencies"; "[t]he consumer price index for goods and services, commonly known as the cost of living"; and "[t]he overall compensation presently received by the employees, including direct wage compensation, vacations, holidays, and other excused time,

---

within a longer period, the panel shall make findings of fact and recommend terms of settlement, which shall be advisory only. The factfinders shall submit, in writing, any findings of fact and recommended terms of settlement to the parties before they are made available to the public. The public agency shall make these findings and recommendations publicly available within 10 days after their receipt."

Section 3505.7 provides: "After any applicable mediation and factfinding procedures have been exhausted, but no earlier than 10 days after the factfinders' written findings of fact and recommended terms of settlement have been submitted to the parties pursuant to Section 3505.5, a public agency that is not required to proceed to interest arbitration may, after holding a public hearing regarding the impasse, implement its last, best, and final offer, but shall not implement a memorandum of understanding. The unilateral implementation of a public agency's last, best, and final offer shall not deprive a recognized employee organization of the right each year to meet and confer on matters within the scope of representation, whether or not those matters are included in the unilateral implementation, prior to the adoption by the public agency of its annual budget, or as otherwise required by law."

8

insurance and pensions, medical and hospitalization benefits, the continuity and stability of employment, and all other benefits received."  (§ 3505.4, subd. (d)(4)-(7).)[6]

If the parties do not settle their dispute within a specified or agreed upon period, the factfinding panel must make advisory findings and recommendations, which the public agency must make publicly available within a specified time after their receipt. (§ 3505.5, subd. (a).)  Provided the public agency is not subject to interest arbitration,[7] the public agency may proceed to implement its last, best, and final offer, but not an MOU, after the public agency exhausts any applicable mediation and factfinding procedures and conducts a public hearing regarding the impasse.  (§ 3505.7.)  The public agency's unilateral implementation of its last, best, and final offer "shall not deprive a

---

[6] Section 3505.4, subdivision (d), provides in full:  "In arriving at their findings and recommendations, the factfinders shall consider, weigh, and be guided by all the following criteria: [¶] (1) State and federal laws that are applicable to the employer.  [¶] (2) Local rules, regulations, or ordinances.  [¶] (3) Stipulations of the parties.  [¶] (4) The interests and welfare of the public and the financial ability of the public agency.  [¶] (5) Comparison of the wages, hours, and conditions of employment of the employees involved in the factfinding proceeding with the wages, hours, and conditions of employment of other employees performing similar services in comparable public agencies.  [¶] (6) The consumer price index for goods and services, commonly known as the cost of living.  [¶] (7) The overall compensation presently received by the employees, including direct wage compensation, vacations, holidays, and other excused time, insurance and pensions, medical and hospitalization benefits, the continuity and stability of employment, and all other benefits received.  [¶] (8) Any other facts, not confined to those specified in paragraphs (1) to (7), inclusive, which are normally or traditionally taken into consideration in making the findings and recommendations."

[7] "Interest arbitration involves an agreement between an employer and a union to submit disagreements about the proposed content of a new labor contract to an arbitrator or arbitration panel.  (*City of Fresno v. Fresno Firefighters, IAFF Local 753* (1999) 71 Cal.App.4th 82, 96.)

recognized employee organization of the right each year to meet and confer on matters within the scope of representation, whether or not those matters are included in the unilateral implementation, prior to the adoption by the public agency of its annual budget, or as otherwise required by law."  (*Ibid.*)

III

A

Around the time the court entered its judgment, the Board issued a decision addressing the statutory interpretation question at issue in this appeal.  (*County of Contra Costa* (2014) PERB Dec. No. Ad-410-M [2014 Cal. PERB LEXIS 14].)  The Board held the Legislature intended the Act's factfinding procedures to apply "to any bargaining impasse over negotiable terms and conditions of employment, and not only to impasses over new or successor [MOUs]."  (*Id*. at pp. *2-3.)  The Board reaffirmed this holding in a subsequent decision.  (*City & County of San Francisco* (2014) PERB Dec. No. Ad-419-M [2014 Cal. PERB LEXIS 48].)

The Board based its holding on several factors.  First, the Act does not contain any language expressly limiting its factfinding provisions to impasses occurring during the negotiation of a comprehensive MOU.  (*County of Contra Costa*, *supra*, 2014 Cal. PERB LEXIS 14 at pp. *51-52.)  Second, the Board had consistently applied the analogous factfinding provisions in the Educational Employment Relations Act (EERA) (§§ 3548.1 through 3548.3) and Higher Education Employer-Employee Relations Act (HEERA) (§§ 3591 through 3593) to all types of bargaining disputes, not just disputes arising in the context of a negotiation for a comprehensive MOU.  (*County of Contra Costa*, at pp. *15,

10

38-43, 68-69.)  Third, interpreting the Act's factfinding provisions to apply to any bargaining disputes is consistent with the legislative history of AB 646.  (*County of Contra Costa*, at pp. *55-59.)  Finally, interpreting the Act's factfinding provisions to apply to any bargaining dispute is consistent with the parties' continuous duty to bargain on any bargainable issue and prepare an MOU after reaching an agreement.  (*Id*. at pp. *64-67.)

B

Although statutory interpretation is ultimately a judicial function, the Board is vested with the authority to interpret the Act.  (*Santa Clara*, *supra*, 224 Cal.App.4th at p. 1026; *Burke v. Ipsen* (2010) 189 Cal.App.4th 801, 809.)  " '[The Board] is "one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect." ' "  (*County of Los Angeles*, *supra*, 56 Cal.4th at p. 922.)  Consequently, we must defer to the Board's interpretation of the Act unless the Board's interpretation is clearly erroneous.  (*Ibid.*; *Santa Clara*, at p. 1026.)

Amici curiae League of California Cities and California State Association of Counties (Amici) contend the Board's decisions interpreting the Act are entitled to no deference because they were created for the purpose of assisting the Board in this litigation.  However, the timing of the Board's decision does not affect the deference we must accord to the decision.  (*S. Bay Union Sch. Dist. v. Public Employment Relations Bd.* (1991) 228 Cal.App.3d 502, 506-507 ["[O]ur construction of legal principles can be

11

influenced by other, even later, pronouncements of the administrative agency"].) Further, judicial comity and restraint preclude us from speculating about any ulterior motives the Board may have had in reaching its decision. (See *In re Shaputis* (2011) 53 Cal.4th 192, 217-218.)

IV

A

1

The Commission does not directly contest any of the Board's reasons for broadly interpreting the Act's factfinding provisions, including the most compelling reason—there is no language in the Act expressly limiting the factfinding provisions to particular types of impasses. Instead, the Commission asserts four reasons why, notwithstanding the lack of limiting language in the Act, we should interpret the factfinding provisions to apply only to impasses occurring in the context of negotiations for comprehensive MOUs. First, the Commission points to the list of criteria in section 3505.4, subdivision (d), that a factfinding panel "shall" consider and weigh before reaching its findings and recommendations. (See fn. 6, *ante*.) In the Commission's view, these criteria—particularly the criteria requiring the consideration of the comparable wages, hours, and working conditions of other public agencies; the consumer price index for goods and services; and the overall compensation employees currently receive (§ 3505.4, subd. (d)(5)-(7))—only make sense for impasses occurring in the context of

12

negotiations for comprehensive MOUs. To conclude otherwise, the Commission contends, would render much of the language in this subdivision surplusage.

2

However, as the Board points out, the criteria listed in section 3505.4, subdivision (d), are virtually identical to the criteria contained in analogous provisions of the EERA. (See § 3548.2, subd. (b).) The only difference between the statutes is that the Act includes a requirement for the factfinding panel to consider local rules, regulations, or ordinances (§ 3505.4, subd. (d)(2)), a criterion not expected to be included in the EERA because the criterion is not generally relevant to public school employment relations. Since at least 2008, the Board has applied the factfinding provisions of the EERA to all types of impasses, not just impasses arising during negotiations of comprehensive MOUs.[8] (See, e.g., *Chico Unified School Dist.* (2008) FF-623 <http://www.perb.ca.gov//ffpdfs/FR0623.pdf> [as of Sept. 26, 2008].) The Legislature presumably knew of the Board's practice when it passed AB 646 in 2011.[9] (*Moore v. California State Bd. of*

---

[8]     The Legislature has also applied the factfinding provisions of the HEERA to all types of impasses since at least 2007. (See, e.g., *California State University* (2007) FF-613 <http://www.perb.ca.gov//ffpdfs/FR0613.pdf> [as of May 2, 2007].)

[9]     Amici contend this presumption does not apply because there is no regulation or reported court or administrative decision squarely addressing the Board's practice. There is also no information in AB 646's legislative history demonstrating the Legislature's awareness of the practice. Essentially, Amici contend we cannot apply the presumption because there is no evidence the presumption applies. This contention misapprehends the nature of a presumption. A presumption is a deduction the law requires to be made from particular facts. (*Maganini v. Quinn* (1950) 99 Cal.App.2d 1, 6.) Unless deemed by the law to be conclusive, a presumption is rebutted by the existence of contrary evidence, not by the absence of supporting evidence. (*Ibid.*) Regardless, the long-standing nature of

13

*Accountancy* (1992) 2 Cal.4th 999, 1017-1018.)  Therefore, we cannot reasonably infer from the language of section 3505.4, subdivision (d), a legislative intent to limit the application of the factfinding provisions in the manner the Commission asserts.

Moreover, if we were to limit the application of the Act's factfinding provisions to only those impasses in which all eight of the listed criteria are relevant, which is the logical extension of the Commission's position, there would be few, if any, circumstances in which the factfinding provisions could ever be utilized.  As the Board explained in its decision in *City & County of San Francisco*, *supra*, 2014 Cal. PERB LEXIS 48:  "Even in a factfinding proceeding concerning a new or successor MOU, not every one of the eight criteria is necessarily applicable to the issues that divide the parties.  When parties reach an impasse in negotiations over a comprehensive MOU, they have usually agreed to at least some terms prior to reaching impasse on more intractable proposals.  Issues that impede final agreement can be economic, or non-economic . . . . Where the issues are non-economic, it is unlikely the factfinding panel would spend time comparing wages and hours of comparable public agencies or assessing the consumer price index in arriving at its recommendations.  Thus, the listing of eight criteria that factfinders are to consider does not demonstrate that factfinding applies only to comprehensive MOUs. … [M]id-term bargaining disputes, or disputes over the effects of layoffs or some other proposed economic reduction, can involve issues that are just as complex as disputes over comprehensive MOUs.  The eight listed criteria can be equally applicable or equally not

the Board's practice is sufficient evidence the presumption applies.  (*El Dorado Oil Works v. McColgan* (1950) 34 Cal.2d 731, 739.)

14

applicable to any bargaining dispute, whether it be a mid-term re-opener, a single issue, effects bargaining, or a comprehensive MOU." (*Id*. at pp. *22-24.)

## B

### 1

Next, the Commission points to the language in section 3505.7 allowing a public agency to implement its last, best, and final offer after exhausting any applicable mediation and factfinding procedures, but precluding the public agency from implementing an MOU. (See fn. 5, *ante*.) The Commission asserts the Legislature would not have used the "any applicable" language in the statute if it had intended the factfinding procedures to apply to any bargainable dispute. The Commission further asserts the language precluding the implementation of an MOU logically reflects the intent only to apply the factfinding procedures to resolve an impasse arising from the negotiation of an MOU.

### 2

One key difficulty with the Commission's position is that the language upon which it relies was part of the Act before the Legislature added the factfinding provisions. The language was derived from the original section 3505.4 with minimal revisions to accommodate the addition of the factfinding provisions.[10] (*Dailey v. City of San Diego*

_____

[10] The original section 3505.4 provided: "If after meeting and conferring in good faith, an impasse has been reached between the public agency and the recognized employee organization, *and impasse procedures, where applicable, have been exhausted*, a public agency that is not required to proceed to interest arbitration may implement its last, best, and final offer, *but shall not implement a memorandum of understanding*. The

15

(2013) 223 Cal.App.4th 237, 254, fn. 4; see fn. 3, *ante*, for a history of section 3505.4.) Consequently, the language offers no particular insight into the intended scope of the factfinding provisions.

In addition, the "any applicable" language is more logically and reasonably construed as a recognition that neither mediation nor factfinding will necessarily occur after an impasse. Mediation will only occur if the parties mutually agree to it. (§ 3505.2.) Factfinding will only occur if the union requests it. (§ 3505.4, subd. (a).) If the parties choose not to mediate their dispute or the union chooses not to request a factfinding, then there would not be "any applicable" mediation or factfinding procedures to exhaust before the public agency could implement its last, best, and final offer.

Likewise, the language precluding the implementation of an MOU is more logically and reasonably construed as a recognition that, at the point a public agency implements its last, best, and final offer, there has not been an understanding or an agreement between the parties to implement. This construction is consistent with section 3505.1, which indicates a binding MOU is the result of a tentative agreement between the

unilateral implementation of a public agency's last, best, and final offer shall not deprive a recognized employee organization of the right each year to meet and confer on matters within the scope of representation, whether or not those matters are included in the unilateral implementation, prior to the adoption by the public agency of its annual budget, or as otherwise required by law." (Former § 3505.4; added by Stats. 2000, ch. 316, § 1, italics added.)

public agency's and the union's negotiators that has been adopted by the public agency's governing body.[11]

C

The Commission also relies on references in AB 646's legislative history the Commission believes indicate the Act's factfinding provisions were directed solely at addressing failed efforts to negotiate collective bargaining agreements. (See, e.g., Assem. Conc. Sen. Amends. to Assem. Bill No. 646 (2011-2012 Reg. Sess.) as amended June 22, 2011, p. 2 ["According to the author, 'Currently, there is no requirement that public agency employers and employee organizations engage in impasse procedures *where efforts to negotiate a collective bargaining agreement have failed*," (italics added)]; *id.* at p. 3 ["AB 646 undermines a local agency's authority to establish local rules for resolving impasse and the requirement that a local agency engage in factfinding *may delay rather than speed the conclusion of contract negotiations,*" (italics added)].)

---

[11] Section 3505.1 currently provides: "If a tentative agreement is reached by the authorized representatives of the public agency and a recognized employee organization or recognized employee organizations, the governing body shall vote to accept or reject the tentative agreement within 30 days of the date it is first considered at a duly noticed public meeting. A decision by the governing body to reject the tentative agreement shall not bar the filing of a charge of unfair practice for failure to meet and confer in good faith. If the governing body adopts the tentative agreement, the parties shall jointly prepare a written memorandum of understanding." (Amended by Stats. 2013, ch. 785, § 1.)

At the time the Legislature passed AB 646, section 3505.1 similarly provided: "If agreement is reached by the representatives of the public agency and a recognized employee organization or recognized employee organizations, they shall jointly prepare a written memorandum of such understanding, which shall not be binding, and present it to the governing body or its statutory representative for determination." (Added by Stats. 1968, ch. 1390, § 7, p. 2728.)

17

However, these references are to arguments made by the supporters and opponents of AB 646. While the Legislature knew of these arguments because they were noted in committee reports and analyses, we generally do not consider references showing the motive or understanding of the bill's author or other interested persons in determining legislative intent. (*Joannou v. City of Rancho Palos Verdes* (2013) 219 Cal.App.4th 746, 759.) Such references are entitled to no weight "unless they reiterate legislative discussion and events leading up to the bill's passage." (*Kleffman v. Vonage Holdings Corp.* (2010) 49 Cal.4th 334, 348.) Even if we could consider the Commission's proffered references, the references are not illuminating because they focus on the mandatory nature of the factfinding provisions, not the scope of their application.

D

Finally, the Commission contends the Board's reliance on decisions interpreting the EERA and the HEERA is misplaced because these statutory schemes differ fundamentally from the Act in their treatment of impasse and factfinding. Specifically, the Commission points out that under the Act, the parties must mutually agree to mediation, and under the other statutory schemes, either party may compel mediation. (§§ 3505.2, 3548, 3590.) In addition, under the Act, only a union may initiate factfinding, and under the other two statutory schemes, either party may initiate factfinding after a mediator declares factfinding to be appropriate. (§§ 3505.4, 3548.1, subd. (a), 3591.) Further, under the Act, the parties must pay the cost of mediation and factfinding, and under the other statutory schemes, the Board may be required to absorb

18

some of the costs. (§§ 3505.5, subds. (b) & (c), 3548.3, subds. (b) & (c), 3593, subd. (b).)

While these procedural distinctions indeed exist, the Commission has not explained nor is it apparent how they are relevant to the intended application of the Act's factfinding provisions, much less how they compel a conclusion the factfinding provisions only apply to impasses during negotiations of comprehensive MOUs. This omission in the Commission's analysis notably weakens the Commission's position, particularly since there is no material distinction in the three statutory schemes' descriptions of what may be submitted to a factfinding panel. (§§ 3505.4, subd. (a) [parties' "differences" may be submitted to a factfinding panel]; 3548.1, subd. (a) [parties' "differences" may be submitted to a factfinding panel; 3591 [parties' "differences" may be submitted to a factfinding panel].)[12]

Amici attempt to fill the analytical gap by arguing the word "differences" does not have the same contextual meaning in the Act as it does in the other two statutory schemes. Citing to section 3548 and section 3590, Amici contend the contextual

_____

[12]    See fn. 3, *ante*, for the language of section 3505.4, subdivision (a).

Section 3548.1, subdivision (a) provides in part: "If the mediator is unable to effect settlement of the controversy within 15 days after his appointment and the mediator declares that factfinding is appropriate to the resolution of the impasse, either party may, by written notification to the other, request that their differences be submitted to a factfinding panel."

Section 3591 provides in part: "If the mediator is unable to effect settlement of the controversy within 15 days after his appointment and the mediator declares that factfinding is appropriate to the resolution of the impasse, either party may, by written notification to the other, request that their differences be submitted to a factfinding panel."

19

meaning of "differences" in the other two statutory schemes is an impasse "over matters within the scope of representation."[13]  Since the Act does not contain the "within the scope of representation" language, Amici Curiae posit the Legislature must have intended for the word "differences" in the Act to mean something other than an impasse over matters within the scope of representation.  We are unpersuaded by this argument because it ignores the fact the Act is a public sector labor relations statute and, as such, "matters within the scope of representation" is the implicit context for all of its provisions.  For the reasons stated in part IV.B, *ante*, we are also unpersuaded by Amici's reliance on the MOU language in section 3505.7 to divine the contextual meaning of "differences."

E

In addition to being unconvincing, the Commission's position is inconsistent with the Act's general purpose.  (*Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 321 [when construing a statute, courts ultimately must choose the construction most closely fitting the Legislature's apparent intent, with a view to promoting, not defeating the statute's general purpose].)  The Act is intended "to promote full communication between

---

[13]    Section 3548 provides in part:  "Either a public school employer or the exclusive representative may declare that *an impasse* has been reached between the parties in negotiations *over matters within the scope of representation* and may request the board to appoint a mediator for the purpose of assisting them in reconciling their *differences* and resolving the controversy on terms which are mutually acceptable."  (Italics added.)
    Section 3590 similarly provides in part:  "Either an employer or the exclusive representative may declare that *an impasse* has been reached between the parties in negotiations *over matters within the scope of representation* and may request the board to appoint a mediator for the purpose of assisting them in reconciling their *differences* and resolving the controversy on terms which are mutually acceptable."  (Italics added.)

public employers and their employees by providing a reasonable method of resolving disputes regarding wages, hours, and other terms and conditions of employment between public employers and public employee organizations." (§ 3500, subd. (a).) The Act is also intended "to strengthen merit, civil service and other methods of administering employer-employee relations through the establishment of uniform and orderly methods of communication between employees and the public agencies by which they are employed." (*Ibid.*)

Applying the factfinding provisions only to impasses arising from MOU negotiations would hinder this purpose by depriving the parties of an orderly method for resolving disputes arising during the negotiation of supplemental matters. Such a result would also be anomalous since the Act makes no other procedural or substantive distinction between the negotiation of comprehensive MOUs and the negotiation of supplemental matters. Indeed, we cannot fathom why the need for an orderly method of resolving disputes would be less acute during the negotiation of supplemental matters than during the negotiation of comprehensive MOUs. The negotiation of supplemental matters is not necessarily less complex nor is the outcome necessarily less important than the negotiation of comprehensive MOUs. For this and the other reasons stated in this opinion, we conclude the Board correctly interpreted the Act's factfinding provisions to apply to all impasses and not just impasses arising during negotiations of comprehensive MOUs. As the trial court determined otherwise, we reverse the judgment and remand the matter for further proceedings consistent with this decision.

21

V

Given our resolution of the Board's appeal, we need not decide the Commission's cross-appeal of the court's orders on the Commission's motion for attorney fees and the Board's motion to tax costs. Therefore, we dismiss the Commission's cross-appeal as moot.

DISPOSITION

The judgment is reversed. The Commission's cross-appeal is dismissed as moot. The matter is remanded to the trial court for further proceedings consistent with this decision. The Board is awarded its costs on appeal.

McCONNELL, P. J.

WE CONCUR:

McINTYRE, J.

AARON, J.